**Dale TIPPINS, Petitioner–Appellee,**

v.

**Hans WALKER, Superintendent, Auburn Correctional Facility, Respondent–Appellant.**

No. 735, Docket 95–2406.

United States Court of Appeals, Second Circuit.

Argued Jan. 2, 1996.

Decided March 7, 1996.

Michael E. Bongiorno, District Attorney, Rockland County, NY (Lisa Cohen, Assistant District Attorney, Rockland County, NY, of counsel), for Respondent–Appellant.

Sally Wasserman, New York City, for Petitioner–Appellee.

Before: McLAUGHLIN, JACOBS, and CALABRESI, Circuit Judges.

JACOBS, Circuit Judge:

Dale Tippins petitioned for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, on the ground that his lawyer slept during Tippins' criminal trial. The United States District Court for the Southern District of New York (Keenan, *J.*) granted the petition, holding that counsel was ineffective *per se* because he was asleep for a "substantial" portion of the trial, and that Tippins' Sixth Amendment right to counsel was thereby denied. Respondent Hans Walker, Superintendent of Auburn Correctional Facility, appeals. For the reasons set forth below, we affirm.

## BACKGROUND

Tippins was arrested in 1986 and charged with one count each of criminal sale of a controlled substance in the first degree and criminal possession of a controlled substance

in the first degree, in violation of New York Penal Law §§ 220.43(a) and 220.21(1), respectively. These charges arose from a controlled buy of two pounds of cocaine by an undercover police officer named Timothy Duffy on March 19, 1986. The transaction was arranged by a confidential informant named John Mayone.

Tippins and his two co-defendants—Clifford Stokes and Joseph Blackman—went to trial in late 1986 before the Honorable William Nelson of the New York County Court of Rockland County. The trial, including the pretrial proceedings, were conducted over a period of six weeks. Tippins, represented by appointed counsel Louis Tirelli, mounted a defense of entrapment. On October 23, 1986, the jury found all defendants guilty. On December 9, 1986, Tippins was sentenced to eighteen years to life, a sentence which he is now serving.

Tippins moved the trial court for an order vacating the judgment under New York Criminal Procedure Law § 440.10, on the ground of ineffective assistance of counsel. In February 1989, the Honorable William Braatz, Acting Supreme Court Justice in Rockland County, conducted a hearing to ascertain the circumstances and determine whether Tirelli's conduct deprived his client of effective assistance during the trial. Testimony was given by Judge Nelson, the court reporter, the prosecutor, a juror, the co-defendants, Tippins' mother, and his girlfriend.

After hearing the testimony, Justice Braatz ruled from the bench that, although Tirelli clearly had slept during the trial, the court could not tell "how long he slept, or what portion of the testimony he missed, if any," and that the petitioner had failed to demonstrate that Tirelli had committed any errors at trial. Specifically, Judge Braatz concluded that Tippins failed to demonstrate that he suffered any prejudice by reason of Tirelli's sleeping:

This defendant has failed to show any trial error or trial errors which arose because of counsel's conduct. It seems to the Court that an examination of the trial transcript, in an attempt to determine if any trial errors occurred, and if there were

errors, that they occurred as a result of counsel's sleeping, or at a time when counsel was sleeping, that they would have been most helpful to defendant's position at this hearing. Apparently defendant is or was unable to do this, although defendant attempted to question, somewhat speculatively, some of defense counsel's tactics.

In a decision dated May 6, 1991, the Appellate Division affirmed, declining to adopt a *per se* ineffective assistance rule and citing the vigorous aspects of the defense that Tirelli conducted on Tippins' behalf:

We find the defendant's contention regarding the ineffective assistance of counsel to be without merit. The record demonstrates that defense counsel vigorously cross-examined the People's witnesses, delivered opening and closing arguments which were consistent with his entrapment defense, raised appropriate objections, made appropriate motions and presented four defense witnesses, including the defendant. Thus, the defendant was provided with meaningful representation.

*People v. Tippins*, 173 A.D.2d 512, 513, 570 N.Y.S.2d 581, 582 (2d Dep't 1991) (citations omitted).

On September 23, 1991, the New York Court of Appeals denied leave to appeal. *People v. Tippins*, 78 N.Y.2d 1015, 575 N.Y.S.2d 823, 581 N.E.2d 1069 (1991). On January 21, 1992, the United States Supreme Court denied certiorari. *Tippins v. New York*, 502 U.S. 1064, 112 S.Ct. 952, 117 L.Ed.2d 120 (1992).

Tippins filed his petition for writ of habeas corpus in the Southern District of New York on February 17, 1993. In an opinion and order dated June 7, 1995, Judge Keenan ruled that the Second Circuit had adopted the rule in *Javor v. United States*, 724 F.2d 831, 833 (9th Cir.1984), which held that counsel's sleeping during a "substantial" portion of a criminal trial was "inherently prejudicial," and that no separate showing of prejudice was necessary to demonstrate ineffective assistance of counsel. Citing ample evidence in the hearing record that Tirelli was asleep during a "substantial" portion of the trial, the

district court held that petitioner's Sixth Amendment right to counsel had been violated, and granted the petition. Respondent appeals.

## DISCUSSION

Only one court of appeals has concluded that a lawyer's sleeping during trial is a *per se* denial of effective assistance of counsel. In *Javor v. United States,* 724 F.2d 831, 833 (9th Cir.1984), the Ninth Circuit held that, "when an attorney for a criminal defendant sleeps through a substantial portion of the trial, such conduct is inherently prejudicial and thus no separate showing of prejudice is necessary." In *United States v. DiTommaso,* 817 F.2d 201, 216 (2d Cir.1987), we cited *Javor* in dictum for the view that "sleeping counsel is tantamount to no counsel at all." However, the issue of whether the slumber of counsel during trial can be inherently prejudicial was not squarely presented in that case, because "the record [was] barren of any factual support for [the] allegation." *Id.* In contrast, the issue is squarely presented with an ample record here.

Under *Javor,* a finding of *per se* prejudice is compelled by a finding of sleeping during a "substantial" part of the trial. Tippins asks us to affirm on the ground that Judge Keenan correctly concluded that the sleeping in this case was "substantial," and that this Circuit deems a defendant to have suffered prejudice *per se* in that circumstance. The word "substantial," however, is unhelpful. It can refer to the length of time counsel slept, or the proportion of the proceedings missed, or the significance of those proceedings. The *Javor* court did not expound on the meaning of the word.

Nevertheless, we agree with Judge Keenan that the evidence in this case supports the grant of the writ. The evidence is not disputed; it demonstrates that counsel was unconscious for numerous extended periods of time during which the defendant's interests were at stake. These circumstances suggest "a breakdown in the adversarial process that our system counts on to produce just results," *Strickland v. Washington,* 466 U.S. 668, 696, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984), and from which we must presume prejudice to the defendant.

The respondent interposes layers of defenses to the writ, which we address in the following order: (A) that the district court impermissibly ignored the factfinding of the state court, and (B) that the petitioner failed to make a particularized showing of prejudice as required by *Strickland* and analogous cases in this Court.

### A. *Factfinding.*

■ Justice Braatz found that "there is no doubt that Mr. Tirelli was sleeping during portions of the trial," but Justice Braatz was "unable ... to determine how long [Tirelli] slept, or what portions of the testimony he missed, if any." The respondent argues that "[t]he hearing court's findings on this issue should be presumed, by this Court, to be correct." In fact, however, Justice Braatz did not make specific findings on any issue other than Tippins' failure to show prejudice. What is significant is that Justice Braatz considered and relied on the testimony of all the witnesses who testified at the hearing, and discredited the testimony of none. Since the testimony of each witness paints a similar picture of what went on at trial, there is no dispute about the facts. Moreover, the district court received the hearing transcript into evidence without objection and without a request by either party for the opportunity to adduce additional evidence. The presumption of correctness afforded by 28 U.S.C. § 2254(d) therefore did not inhibit Judge Keenan's ability to make his own findings based on the transcript of the proceedings conducted by Justice Braatz.

### B. *Prejudice.*

In general, a defendant claiming ineffective assistance of counsel must demonstrate that (1) counsel's conduct "fell below an objective standard of reasonableness," and (2) this incompetence caused prejudice to the defendant. *Strickland,* 466 U.S. at 687–88, 104 S.Ct. at 2064. An attorney is presumed to be competent, and "the burden rests on the accused to demonstrate a constitutional violation." *United States v. Cronic,* 466 U.S. 648,

658, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657 (1984).

*Strickland* recognized, however, that there are some situations where prejudice will be presumed, because it will be "so likely that case-by-case inquiry into prejudice is not worth the cost," 466 U.S. at 692, 104 S.Ct. at 2067, because such errors are "easy to identify," and because such deprivations are "easy for the government to prevent." *Id.* Examples are cases of "[a]ctual or constructive denial" of counsel or "state interference" with counsel's assistance. *Id.*

*Strickland* also discussed another, more limited, type of presumed prejudice, and it offered as one example cases in which counsel is burdened by a conflict of interest. *Id.* In such instances, counsel has breached the duty of loyalty, and "it is difficult to measure the precise effect on the defense" of such a conflict. *Id.* Moreover, trial courts can "make early inquiry in certain situations likely to give rise to conflicts," *id.,* and remedy them. In such instances, the Supreme Court required a showing that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected" counsel's performance. *Id.* (citation and quotation marks omitted).

"[W]ithout enthusiasm," this Court has extended the *per se* rule to cases where the person appearing as defense counsel was not a member of the bar, and cases where counsel had a conflict of interest arising from the lawyer's implication in the defendant's crime. *Bellamy v. Cogdell,* 974 F.2d 302, 306 (2d Cir.1992) (in banc) (quoting *United States v. Aiello,* 900 F.2d 528, 532 (2d Cir.1990)), *cert. denied,* 507 U.S. 960, 113 S.Ct. 1383, 122 L.Ed.2d 759 (1993). *See United States v. Novak,* 903 F.2d 883, 890 (2d Cir.1990) (counsel fraudulently obtained license); *United States v. Cancilla,* 725 F.2d 867, 870 (2d Cir.1984) (counsel implicated in defendant's crimes); *Solina v. United States,* 709 F.2d 160, 167 (2d Cir.1983) (counsel never admitted to bar).

■ We are reluctant to extend a rule of *per se* prejudice in any new direction. Ordinarily, episodes of inattention or slumber are perfectly amenable to analysis under the *Strickland* prejudice test. And, as respon-

dent argues, there are real dangers in presuming prejudice merely from a lack of alertness. Prolonged inattention during stretches of a long trial (by sleep, preoccupation or otherwise), particularly during periods concerned with other defendants, uncontested issues, or matters peripheral to a particular defendant, may be quantitatively substantial but without consequence. At such times, even alert and resourceful counsel cannot affect the proceedings to a client's advantage.

However, as the majority reasoned in *Javor,* "[p]rejudice is inherent" at some point, "because unconscious or sleeping counsel is equivalent to no counsel at all." 724 F.2d at 834. Effectiveness of counsel depends in part on the ability to confer with the client during trial on a continuous basis, and the attorney must be "present and attentive" in order to make adequate cross-examination— "a matter of constitutional importance" by virtue of the Sixth Amendment. *Id.* Moreover, if counsel sleeps, the ordinary analytical tools for identifying prejudice are unavailable. The errors and lost opportunities may not be visible in the record, and the reviewing court applying the traditional *Strickland* analysis may be forced to engage in "unguided speculation." *Id.* (quoting *Cooper v. Fitzharris,* 586 F.2d 1325, 1332 (9th Cir.1978) (in banc) (citation omitted), *cert. denied,* 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979)).

Moreover, the question of prejudice under *Strickland* ordinarily entails consideration of the range of strategies and tactics available to a lawyer. *Strickland,* 466 U.S. at 689–90, 104 S.Ct. at 2065–66. On that basis, in case after case, we have declined to deem counsel ineffective notwithstanding a course of action (or inaction) that seems risky, unorthodox or downright ill-advised. *See United States v. Tarricone,* 21 F.3d 474, 476 (2d Cir.1993) (decision to forgo testimony of handwriting expert); *United States v. Nersesian,* 824 F.2d 1294, 1321 (2d Cir.1987) (decision to forgo opening statement), *cert. denied,* 484 U.S. 957, 108 S.Ct. 355, 98 L.Ed.2d 380 (1987); *Cuevas v. Henderson,* 801 F.2d 586, 590 (2d Cir.1986) (questioning that "opened the door" to damaging evidence), *cert. denied,* 480 U.S. 908, 107 S.Ct. 1354, 94

L.Ed.2d 524 (1987). Of course, the buried assumption in our *Strickland* cases is that counsel is present and conscious to exercise judgment, calculation and instinct, for better or worse. But that is an assumption we cannot make when counsel is unconscious at critical times.

■ Although respondent argues that Tippins failed to carry his burden of adducing specific attorney errors resulting in prejudice, we understand Tippins' claim of prejudice to be not that his lawyer should have taken any particular initiative that would potentially affect the result, but that, at critical times, Tippins had no counsel to sort out what initiatives were open. Under these circumstances, where the adversary nature of the proceeding was subject to repeated suspensions, there is little difference between saying that prejudice will be presumed and saying that prejudice has been demonstrated.

We therefore conclude that Tippins suffered prejudice, by presumption or otherwise, if his counsel was repeatedly unconscious at trial for periods of time in which defendant's interests were at stake. Such circumstances implicate a fundamental value that *Strickland* enjoins us to keep in mind:

> A number of practical considerations are important for the application of the standards we have outlined. Most important, in adjudicating a claim of actual ineffectiveness of counsel, a court should keep in mind that the principles we have stated do not establish mechanical rules. Although those principles should guide the process of decision, the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.

*Strickland*, 466 U.S. at 696, 104 S.Ct. at 2069.

### 1. *Repeated and Prolonged Lapses.*

The district court made the following findings: (1) Tirelli slept every day of the trial; (2) he slept during the testimony of Mayone, a "critical" prosecution witness; and (3) he slept during "damaging" testimony by co-defendant Stokes. As discussed above, we do not believe that these findings conflict with the state court's statement that it could not determine the amount of Tirelli's sleeping or the specific portions of testimony Tirelli missed. To the extent that a conflict is perceived, we believe the district court's findings were justified on the uncontroverted record, pursuant to 28 U.S.C. § 2254(d)(8). Our review of the hearing transcript confirms that Tirelli's sleeping denied Tippins effective assistance of counsel.

The evidentiary portion of the trial lasted twelve days. Judge Nelson testified that Tirelli "slept every day of the trial. How many times during the day I didn't keep track, but he was asleep at times every day of the trial." Judge Nelson recalled that on one occasion (at least) he halted the trial, took all the lawyers into the hallway and issued a warning to Tirelli:

> The singular purpose of going into the hallway with four lawyers was to instruct Mr.—to wake Mr. Tirelli up, and to instruct him not to sleep any further, that he should be paying attention. I think Mr. Stokes was testifying at that time. And Mr. Stokes was offering testimony that was detrimental to Mr. Tippins' welfare, let's put it that way. That's probably one of the main reasons I said, now is the time to wake Mr. Tirelli up and go to the hall.

Notwithstanding that episode, in which Tirelli slept during the testimony of an important witness, Judge Nelson expressed "no doubt ... as far as I'm concerned, ... [Tippins] received a fair trial, that he was effectively represented by Mr. Tirelli."

The court reporter, Joanne Luongo, testified that Tirelli "was sleeping a lot." Unable to say how many times the lawyer fell asleep, she characterized the number as "significant." Asked whether he slept in the course of the testimony of more than five witnesses she responded:

> A. I would say five might be a good number.

Q. Was he sleeping during most of their testimony, some of their testimony, all of their testimony?

A. It was significant, but I can't tell you all, some. Some is probably the best answer I can give you.

Q. These approximately five witnesses he was sleeping [sic], were they different witnesses?

A. Yes.

Luongo also said that this sleeping "was a continuous thing that happened almost every day."

The trial prosecutor, former District Attorney John Edwards—who presumably would be looking elsewhere most of the time—testified that he too saw Tirelli

sleeping, or [he] had his eyes closed. I recall ... two instances because Judge Nelson called all of the attorneys outside. I remember one of those. I believe it was [the testimony of] Mr. Stokes. I don't remember the other occasion. I just have a recollection that we were called outside for that purpose. Twice[,] at least twice.

One of the jurors, Jeffrey Halpern, recalled that Tirelli "would fall asleep quite often during the trial," and that, during the two-day testimony of Mayone (the confidential informant) Tirelli was asleep about 65% of the time. During Stokes' testimony, Halpern recalled that the lawyer slept for "[t]he majority of it," including part of each day Stokes was on the stand.

Co-defendant Stokes testified that he observed Tirelli sleeping at various times during the trial, including during the testimony of Timothy Duffy, who was the supposed buyer in the drug transaction at issue. He recalled Tirelli sleeping "anywhere from five to seven minutes, maybe longer" during Duffy's testimony. The other co-defendant, Blackman, "observed during the trial, practically during the whole trial [Tirelli] was always sleeping. He sleeps and he nods, he snores." Blackman recalled that Tirelli slept or nodded during the majority of the trial. Doris Tippins, the defendant's mother, attended three or four days of the trial, and she recalled seeing only the testimony of Stokes. She recalled Tirelli sleeping about

two or three times. The defendant's girlfriend, Jeanette Johnson, recalled seeing Tirelli sleeping, possibly three or four times, during the three days of Stokes' testimony. Of course, neither Doris Tippins nor Johnson would have had a good vantage for watching Tirelli during the trial.

### 2. *Unconsciousness.*

We agree with the respondent that the appearance of "sleeping" may cover a range of behavior. Lawyers may sometimes affect a drowsy or bored look to downplay an adversary's presentation of evidence. We are also mindful of Judge Bellacosa's warning in *People v. Winkler*, 71 N.Y.2d 592, 598, 528 N.Y.S.2d 360, 363, 523 N.E.2d 485, 488 (1988)—cited both by Justice Braatz and by the Second Department on Tippins' state appeal—that a *per se* rule would "give ... unscrupulous attorneys a delayed-trigger weapon to be sprung at some later strategic phase of the proceeding if events developed very badly for a defendant...." However, respondent has not contended that Tirelli's sleeping was a charade or a tactical device. And it would be difficult for the respondent to make that claim, given the testimony that the trial prosecutor acknowledged his adversary's snoring by exchanging knowing looks with the court reporter. In any event, trial judges are well-positioned to detect, guard against, and penalize such a tactical abuse of the right to counsel.

Respondent draws useful analogies to other kinds of lawyer impairment that have not been found to warrant findings of *per se* prejudice. *See Berry v. King*, 765 F.2d 451, 454 (5th Cir.1985) (drug abuse), *cert. denied*, 476 U.S. 1164, 106 S.Ct. 2290, 90 L.Ed.2d 731 (1986); *Burnett v. Collins*, 982 F.2d 922, 930 (5th Cir.1993) (alcohol); *Smith v. Ylst*, 826 F.2d 872, 875–76 (9th Cir.1987) (mental illness), *cert. denied*, 488 U.S. 829, 109 S.Ct. 83, 102 L.Ed.2d 59 (1988). In *Bellamy v. Cogdell*, 974 F.2d 302, 303 (2d Cir.1992) (in banc), *cert. denied*, 507 U.S. 960, 113 S.Ct. 1383, 122 L.Ed.2d 759 (1993), we declined to apply the "narrowly crafted *per se* rule" to a claim of ineffective assistance of counsel based on the lawyer's alleged mental illness. Although we ultimately agreed with the district court's

conclusion that counsel was mentally competent, we also stated that "there is simply nothing inherent in an attorney's illness that necessarily will impede a spirited defense 'most of the time' " so as to justify imposing a *per se* rule. *Id.* at 308. We pointed out that, "given the varying effects health problems can have on an individual's ability to function, claims of ineffective assistance based on attorney illness are best suited to the fact-specific prejudice inquiry mandated by *Strickland.*" *Id.* Respondent argues that occasional sleeping is analogous to the nebulous impairments of mental illness, drugs and alcohol, and emphasizes "the subtleties and varying effects of sleep, dozing, meditating and concentrating by closing one's eyes" and the "varying effects" of sleep on "an individual's ability to function."

The point is well taken that consciousness and sleep form a continuum, and that there are states of drowsiness that come over everyone from time to time during a working day, or during a trial, for that matter. The record here demonstrates that Tirelli was actually unconscious. The testimony of several witnesses at the hearing leaves no room for shading or degree. Tirelli's sleeping was not a fitful inattention or a meditative focusing of the mind's powers. Luongo, the court reporter, heard him snore a couple of times as she was trying to focus on the transcription of the testimony. On those occasions, she recalled meeting the eyes of the prosecutor, "and we both would look at Mr. Tirelli and know that he was snoring and . . . it became apparent to me then." Luongo observed other telltale signs: "Sometimes his head was falling down and he would pick it up. It was obvious that he was sleeping." She recalled that "the pen even fell out of his hands a few times," and that he "nodd[ed] out, having his hands down, even further than he would if you were sitting and taking notes with your hands over your head."

Halpern recalled "looking over at" Tirelli from the jury box "and seeing him either head forward all the way, or head back all the way and eyes totally closed." Co-defendant Stokes heard Tirelli snoring and observed Tippins repeatedly jabbing his lawyer with his elbow in order "to bring his attention to what was happening in the court." Co-defendant Blackman also heard snoring:

Q. And how do you know he was sleeping?

A. Well, sometimes, if the court got quiet, you will hear these strange sounds (witness made snoring sounds).

### 3. *Tippins' Interests at Stake.*

Based on the hearing record, the district court concluded that Tippins was denied effective assistance of counsel. That conclusion is sustainable if—as seems clear—Tirelli was repeatedly unconscious, and if that happened at times when Tippins' interests were at stake.

A consensus of those who could observe Tirelli confirms that episodes of deep sleep were repeated, and lasted for (at least) several minutes at a time. The testimony also confirms that Tippins interests were at stake while his counsel slept.

The court reporter testified that the periods of unconsciousness took place during the testimony of several witnesses, and accepted five as a fair estimate. No one can determine at this distance who these witnesses were, but we can deduce that those witnesses included either the key prosecution witnesses or the witnesses Tippins was calling in his own defense. Of the twelve persons who testified at trial, Tippins was one, and three others were called by Tippins—one whose testimony supported Tippins' version of the facts and disputed Mayone's, and two character witnesses. If one assumes that Tirelli would be awake during the testimony of his own witnesses, then it is likely that he slept during the testimony of five out of the remaining eight witnesses. They were (1) Louis Deltoro, a New York state trooper; (2) Duffy, the undercover officer; (3) Mayone; (4) George Harlin, a New York state narcotics investigator; (5) Gail Tissot, a state forensic scientist; (6) Stokes; (7) Bonnie Lanier, a witness who invoked the Fifth Amendment; and (8) Robert Eboli, a police officer. At least five of these witnesses should have commanded close attention from Tippins' counsel. Halpern testified that Tirelli was not fully conscious during half of the testimony of co-defendant Stokes and two-thirds of the

testimony of confidential informant May-one—two witnesses of undeniable importance to the prosecution of Tippins. Halpern, Doris Tippins, and Judge Nelson testified that Tirelli slept during Stokes' testimony.

In short, there is simply no basis for the hope that Tirelli was functioning as a lawyer during critical times at trial. The trial judge was so alarmed by Tirelli's sleeping during damaging testimony by Stokes that he interrupted proceedings to reprimand him in the hall. The prosecutor recalls that there were two such reprimands. It may be that such an awakening would have been curative if the sleeping was an isolated event. But we cannot count on a trial judge to serve as the defense lawyer's alarm clock whenever matters arise that touch the client's interest. A judge is not privy to the tactics or strategy of the defense, however evident they may appear to be. Indeed, it would be an inversion of the attorney-client relationship to require the defendant to alert the lawyer to important events in the proceedings. In these circumstances, the steps taken by the trial judge evidenced the dangerous character of the problem without curing it.

### CONCLUSION

We therefore conclude that Tippins was deprived of effective assistance of counsel during his trial, in violation of his Sixth Amendment right to counsel, and affirm the district court's judgment.