**James COURTNEY, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 94–CF–1061 & 96–CO–1912.**

District of Columbia Court of Appeals.

Argued Jan. 28, 1998.

Decided March 19, 1998.

---

ed States Attorney, and John R. Fisher and Mary–Patrice Brown, Assistant United States Attorneys, were on the brief, for appellee.

Before STEADMAN, REID and GRAAE *, Associate Judges.

REID, Associate Judge:

After a jury trial, appellant James Courtney was convicted of one count of first degree burglary while armed, in violation of D.C.Code §§ 22–1801(a), –3202 (1996); two counts of possession of a firearm during a crime of violence, in violation of D.C.Code § 22–3204(b); and one count of assault with a dangerous weapon, in violation of § 22–502.[1] Courtney contends on appeal that, under the Sixth Amendment to the Constitution of the United States, he was denied effective assistance of counsel, and that the trial court erred in failing to hold an evidentiary hearing on this matter. We affirm.

## FACTUAL SUMMARY

Courtney's convictions arose out of disputes with persons living in the 1600 block of W Street, S.E. At the time, Courtney's girlfriend resided with her cousin at 1645 W Street, in apartment number 302, located across the hall from apartment number 303 where complainant Patricia Johnson lived with her one year-old son.

On January 26, 1994, Courtney's girlfriend went to Johnson's apartment to look for Courtney. Without permission, she walked through Johnson's apartment and refused to leave upon demand. Later, on the same day, when another person visited Johnson's apartment, Courtney and his girlfriend were in the hallway. As Johnson stood in her doorway, hostile words were spoken by Courtney's girlfriend. Johnson, who thought Courtney's girlfriend was ready to fight her, eventually called her cousin, Ava Navarro, and asked her to come and take her (Johnson's) son out

Walter S. Booth, appointed by this court, Washington, DC, for appellant.

Ann L. Rosenfield, Assistant United States Attorney, with whom Mary Lou Leary, Unit-

---

* Sitting by designation pursuant to D.C.Code § 11–707(a) (1995).

1. Courtney was sentenced to seven to twenty-one years in prison on the first degree burglary while armed conviction; five to fifteen years on each count of possession of a firearm during a crime of violence; and three to ten years for assault with a dangerous weapon, all terms to run concurrent to each other.

of the apartment. Navarro lived in the same housing complex, at 1641 W Street.

When Navarro arrived at Johnson's apartment, she began to dress Johnson's son. While Navarro was still dressing the boy, Courtney kicked the apartment door open and entered with a handgun. His girlfriend followed him in. Courtney cocked the weapon and pointed it at Navarro and Johnson's son. He asked whether Navarro and Johnson were planning "to jump" his girlfriend. Johnson said that neither of them intended to harm his girlfriend and that Navarro was there to pick up Johnson's child. Courtney's girlfriend then grabbed Courtney's arm and told him to leave the apartment because she thought Johnson and Navarro were about to call the police.

Several days later, on February 4, 1994, Johnson and two friends—Tracy Stoutamire and Lisa Hill, were in Navarro's apartment. They looked out of an apartment window to watch the police make a drug arrest. While they were watching the arrest, Courtney's girlfriend approached the window and said she "better not catch [any of the women] outside by [themselves]." Later that same day, Courtney's girlfriend and others pushed their way into Navarro's apartment. The girlfriend eventually began to hit Stoutamire, and a fight ensued. Courtney's girlfriend pummeled Stoutamire in the head, chest and back. Soon Stoutamire lapsed into unconsciousness. She was covered with blood, and eventually was taken to the hospital.[2]

On August 19, 1996, approximately two years after he was sentenced to prison, Courtney filed a motion to vacate his conviction pursuant to D.C.Code § 23–110, on the ground that he received ineffective assistance of trial counsel, in violation of his Sixth Amendment constitutional right to counsel. Aside from conclusory allegations regarding his trial counsel's failure to file unspecified motions, or to interview or call unnamed exculpatory witnesses, Courtney claimed that his counsel was sleeping during trial, and failed to properly examine and cross-examine witnesses, or to make proper objections. In his affidavit accompanying his § 23–110 motion, Courtney stated:

> [My trial counsel] slept through a portion of my case and since he was asleep, he was unable to properly object to improper questions or to cross-examine witnesses.

No specific examples of his trial counsel's alleged sleeping incidents, or lack of objections or cross-examination were included in the affidavit. Courtney's girlfriend also presented an affidavit in his behalf. Whereas Courtney maintained that his counsel "slept through a portion of [his] case," Courtney's girlfriend stated he "slept through a major portion of the trial."

In denying Courtney's motion to vacate his conviction under § 23–110, the trial court said, in part:

> Having presided over the trial, the court can state from its own observations that defendant's attorney did not sleep through any significant portions of the trial, and that allegation is categorically false.

Furthermore, the trial court concluded that no hearing on the § 23–110 motion was required because "[d]efendant's motion presents precisely the type of vague and conclusory allegations that the District of Columbia Court of Appeals has repeatedly held may be dismissed without a hearing." The court observed that "[Courtney's] motion contains no factual information to substantiate his allegations."

## ANALYSIS

▮ To prevail on his ineffective assistance of counsel argument, Courtney "must show (1) deficient performance by his trial counsel, and (2) prejudice traceable to his counsel's deficiencies." *Zanders v. United States,* 678 A.2d 556, 569 (D.C.1996) (citing *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984)). The burden is a heavy one because "a court must indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Strickland, supra,* 466 U.S. at 689, 104 S.Ct. at

---

**2.** Although government witnesses said that Courtney participated in beating Stoutamire, this testimony was contradicted by the defense and

Courtney was acquitted of all charges relating to the February 4 incident.

2065. "[T]o prove prejudice [Courtney] 'must [show] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Zanders, supra,* 678 A.2d at 569 (quoting *Strickland, supra,* 466 U.S. at 694, 104 S.Ct. at 2068). Furthermore, although we have recognized a presumption in favor of a hearing on a § 23–110 claim of ineffective assistance of counsel, we have stated consistently that no hearing is required where defendant's motion "consists of (1) vague and conclusory allegations, (2) palpably incredible claims, or (3) allegations that would merit no relief even if true." *Ready v. United States,* 620 A.2d 233, 234 (D.C.1993) (quoting *Ramsey v. United States,* 569 A.2d 142, 147 (D.C.1990)).

Courtney's claims are vague and conclusory regarding the failure of his trial counsel to interview or call witnesses, or make objections or cross-examine witnesses.[3] Nor does he provide any factual detail regarding his allegation that "[his counsel] slept through a portion of [his] case and since he was asleep, he was unable to properly object to improper questions or cross-examine or examine witnesses." Moreover, Courtney's girlfriend did not provide details regarding her assertion that counsel for Courtney "slept through a major portion of the trial." Furthermore, the trial court here flatly stated from its own observations that appellant's attorney "did not sleep through any significant portions of the trial." This conclusion leaves open the possibility that counsel slept through "insignificant portions of the trial."

■ We have never before decided whether trial counsel's sleeping through any portion whatever of a defendant's trial *per se* constitutes evidence of ineffective assistance of counsel. In *Payne v. United States,* 697 A.2d 1229 (D.C.1997), we declined to hold

that drug abuse or alcohol usage is *per se* evidence of ineffective assistance of counsel. *Id.* at 1232. Similarly, here, while sleeping by defense counsel in the course of trial can be a matter of serious potential concern, *see Javor v. United States,* 724 F.2d 831, 833–34 (9th Cir.1984) (sleeping counsel is tantamount to no counsel at all), we cannot say that any degree at all of sleeping by trial counsel constitutes *per se* evidence of ineffective assistance of counsel.

In *Tippins v. Walker,* 77 F.3d 682 (2d Cir.1996), the Second Circuit recognized that "consciousness and sleep form a continuum, and ... there are states of drowsiness that come over everyone from time to time during a working day, or during a trial...." *Id.* at 689. What constrained the court to conclude that ineffective assistance of counsel had occurred was not sleeping *per se* by trial counsel. Rather, it was "episodes of deep sleep," including snoring and "periods of unconsciousness" during the testimony of key witnesses where "[defendant's] interests were at stake." *Id.* at 689. In fact, in *Tippins,* counsel probably slept through the testimony of five out of eight government witnesses, and the trial judge "was so alarmed" that he stopped the trial proceedings twice to reprimand counsel for his sleeping and periods of unconsciousness during "damaging testimony" against his client. *Id.* at 689–90.

■ Here, we are presented with no record indicating that "counsel was repeatedly unconscious at trial for periods of time in which defendant's interests were at stake," or that the trial judge reprimanded him twice for sleeping during "damaging testimony" against his client. *Id.* at 687–90. Nor are we presented with any specificity as to when the alleged sleeping took place during the trial, and how it affected Courtney's interests.[4] In the absence of such specificity, no

---

**3.** The record reveals that Courtney's counsel cross-examined government witnesses Patricia Johnson, Lisa Hill, Tracy Stoutamire, Ava Navarro, Officer Michael Bunner, and Officer Marc Wilkins. Counsel for Courtney did not cross-examine Officer Peter Woodbury. Moreover, defense counsel did not make many objections during the government's direct examination of its witnesses. Four witnesses testified in Courtney's behalf: Marcella Gooding, Barbara Wagner, Vernette Cross, and Pernell Lee. Courtney's girl-

friend's unsworn affidavit mentions two persons who "were called to court, but were never put on the witness stand." However, she does not indicate the nature of their proposed testimony, and Courtney's affidavit makes no reference to them.

**4.** *Tippins* acknowledged that

there are real dangers in presuming prejudice merely from a lack of alertness. Prolonged inattention during stretches of a long trial (by

hearing was required. *Ready, supra,* 620 A.2d at 234. Moreover, on the record before us, we see no reason to articulate a *per se* constitutional principle that sleeping by trial counsel constitutes evidence of ineffective assistance of counsel. Indeed, what the Second Circuit said in *United States v. DiTommaso,* 817 F.2d 201 (2d Cir.1987) is true here:

> [Appellant] also complains that his attorney actually slept through portions of [his] trial. Although sleeping counsel is tantamount to no counsel at all, *Javor v. United States,* 724 F.2d 831, 833–34 (9th Cir.1984), the record is barren of any factual support for this allegation.

*Id.* at 215–16 (footnote omitted). And, as we stated in *Payne, supra,*

> Based upon our review of the record and transcripts in this case, we agree that there is no credible evidence of deficient performance by [Courtney's] counsel. Furthermore, we see no error that 'undermines confidence in the outcome' of [Courtney's] trial, or that rises to the level of prejudice required for [Courtney] to prevail on the second prong of the *Strickland* standard.

*Id.* at 1233 (quoting *Strickland, supra,* 466 U.S. at 694, 104 S.Ct. at 2068).[5]

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

*So Ordered.*

---

sleep, preoccupation or otherwise), particularly during periods concerned with other defendants, uncontested issues, or matters peripheral to a particular defendant, may be quantitatively substantial but without consequence. At such times, even alert and resourceful counsel cannot affect the proceedings to a client's advantage.
*Id.* at 686.

5. In his brief, Courtney "note[d] the recent disbarment of his trial counsel" and stated he "would allege the same conduct [for which his counsel was disbarred] permeated his own trial, and prejudiced him accordingly." However, his counsel was not disbarred for unprofessional conduct with regard to his representation of Courtney. Nor does the record in Courtney's case reveal any conduct similar to that which prompted his trial counsel's disbarment.