■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ISAIAS LOPEZ, JR., Appellant. [747 NYS2d 498] —Judgment, Supreme Court, New York County (James Yates, J.), rendered September 21, 1995, convicting defendant, upon his plea of guilty, of murder in the second degree, aggravated sexual abuse in the first degree and robbery in the first degree, and sentencing him to concurrent terms of 25 years to life, 8⅓ to 25 years

and 8⅓ to 25 years, respectively, and order, same court and Justice, entered on or about July 9, 2001, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment, unanimously affirmed.

Defendant's CPL 440.10 motion to vacate the judgment was properly denied. After a thorough evidentiary hearing, the motion court considered all of the pertinent facts and applicable law, and properly determined that defendant received effective assistance. Counsel's representation of defendant in connection with his guilty plea was meaningful, effective, and competent, and, therefore, in the final analysis, unassailable (see People v Ford, 86 NY2d 397, 404; see also Hill v Lockhart, 474 US 52).

The record demonstrates that counsel carefully explored possible lines of defense. It was clear defendant had no plausible defense whatsoever to the charges. This is so especially after the People acquired what would likely have been admissible and highly damaging letters written by defendant while the case was pending. According to the article 440 hearing testimony, in these letters defendant said he was "faking his psychiatric symptoms" and was "carrying out a deliberate, long-term plan to defeat the criminal charges against him, avoid prison, instead wind up incarcerated in a mental facility and get out of the mental facility in fairly short order within a few years." Counsel's principal role—in a case where the evidence was powerful and the crimes were so vicious, brutal and cruel that a sentencing court would consider a long consecutive sentence most seriously—was to seek the most favorable disposition possible and avoid that outcome. Indeed, it is reasonable to conclude that consecutive sentences for crimes as heinous as these would likely have been imposed had the defendant been found guilty after a trial.

Because this case principally involves defense counsel's mental condition, vis-à-vis his representation of defendant during the time leading up to and including defendant's guilty plea and sentence, it is critically important to set forth clearly the factual backdrop of that representation in order to understand both our holding today and the evidence that the judge and jury would have seen and heard had defendant exercised his right to have a trial. On August 5, 1992, defendant, a college student, went to the home of his father's girlfriend, and asked her if he could borrow a video camera. Once inside the home, defendant produced a hatchet and bludgeoned her in the head with it. He then strangled her with an electrical wire and smothered her with cushions. While his victim was still alive, defendant groped her breasts, forced his

hand and the hatchet into her vagina, and stabbed her with a fork. He then took off his pants and underwear and rubbed himself against her. When she was dead, defendant took her jewelry and the video camera from her apartment. Defendant and a friend videotaped themselves with the victim's camera, and defendant is seen on tape holding the victim's jewelry, gloating. The following day, the police recovered the video camera from defendant's college dormitory room, pursuant to a search warrant. After his arrest, defendant waived his *Miranda* rights and provided both written and videotaped confessions.

In light of the foregoing, counsel appropriately advised defendant to plead guilty pursuant to the agreement that the court would impose concurrent sentences.

Nevertheless, defendant argues that, irrespective of counsel's actual performance and the result he achieved, counsel was unable to represent him because he was later found mentally unfit to practice law. Defendant's claim rests primarily on psychiatric testimony about counsel's unfitness, and on the disciplinary decision of the Appellate Division, Second Department, which suspended counsel several months after defendant's plea and sentencing. It is undisputed that counsel's suspension was based on evidence of his mental condition during the time frame in which he was representing defendant. That Court ultimately disbarred counsel. (*Matter of Linietsky*, 263 AD2d 102.)

Defendant argues that while an attorney's mental illness will not, per se, render the attorney ineffective, a lawyer who has been found, through both a psychiatric examination and a judicial proceeding, to be mentally unfit to practice law is tantamount to no attorney at all. While in very limited circumstances, such as that of an unlicensed attorney (*People v Felder*, 47 NY2d 287) or an attorney who sleeps through a significant portion of a trial (*Tippins v Walker*, 77 F3d 682), there is a constructive absence of counsel, we do not see a sufficiently compelling or persuasive reason to create a new per se rule to cover the instant situation. Instead, we agree with the United States Court of Appeals for the Ninth Circuit that "[r]ather than attempt to identify mental illnesses that would presumptively disable an attorney from conducting a criminal defense we believe it is more prudent to evaluate the attorney's actual conduct of a trial [or plea proceedings] in light of allegations of mental incompetence." (*Smith v Ylst*, 826 F2d 872, 876, *cert denied* 488 US 829; *see also Bellamy v Cogdell*, 974 F2d 302, 308-309, *cert denied* 507 US 960.)

We find the present situation analogous to that in *People v Badia* (159 AD2d 577, *lv denied* 76 NY2d 784), where defense counsel admitted he had been under the influence of drugs during defendant's trial. There the court declined to apply a per se rule, and instead focused on whether the attorney's condition had any actual effect on his performance.

Finally, we conclude that an attorney's suspension on the ground of mental disability does not itself establish that every representation of a criminal defendant by that attorney during the time period giving rise to the suspension was necessarily ineffective, regardless of all other circumstances. Suspension of mentally disabled lawyers is "a necessary precaution taken by the court to protect the public and further its confidence in and reliance upon the integrity and responsibility of the legal profession." (*Matter of Rowe*, 73 NY2d 336, 338.) Accordingly, there is no cause to depart from the usual rule that "[s]o long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, the constitutional requirement will have been met." (*People v Baldi*, 54 NY2d 137, 147.) Concur—Nardelli, J.P., Mazzarelli, Buckley, Sullivan and Marlow, JJ.