In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00029-CV


______________________________




JOCELYN ROSS, Appellant



V.



MATTHEW HINTON, Appellee




 


On Appeal from the County Court at Law


Bowie County, Texas


Trial Court No. 06C1693-CCL




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Jocelyn Ross has filed pro se an appeal from a judgment and order of possession on a forcible
entry and detainer suit. The judgment was signed by the trial court February 7, 2007. On March 2,
2007, we informed Ross by letter that her brief was due on or before April 2, 2007. No brief was
filed, nor did we receive a response to that letter.

 On April 19, 2007, we again contacted Ross by letter, reminding her that her brief was
overdue and that we had not received a reasonable explanation for her failure to file the brief. We
also warned Ross that, if we did not receive her brief within fifteen days of the date of the letter, we
would dismiss the appeal for want of prosecution pursuant to Rule 42.3(b) and (c) of the Texas Rules
of Appellate Procedure. See Tex. R. App. P. 42.3(b), (c).

 As of the date of this opinion, we have received no response. 

 We dismiss the appeal for want of prosecution.


 Jack Carter

 Justice


Date Submitted: May 24, 2007

Date Decided: May 25, 2007





st show that the
trial attorney made errors that are "so serious that counsel was not functioning as the 'counsel'
guaranteed by the Sixth Amendment." Strickland, 466 U.S. at 687.

 The appellant must next demonstrate that trial counsel's objectively deficient conduct
prejudiced the appellant's trial result. McFarland, 163 S.W.3d at 754 (citing Strickland, 466 U.S. 
at 687). Under this prong of the Strickland test, the appellant must show "there is a reasonable
probability that, but for counsel's unprofessional errors, the result of the proceeding would have been
different." Strickland, 466 U.S. at 694. The term "reasonable probability" under Strickland's second
prong means a "probability sufficient to undermine confidence in the outcome [of the trial]." Id. 
"Absent some effect of the challenged conduct on the reliability of the trial process, the Sixth
Amendment guarantee is generally not implicated." McFarland, 163 S.W.3d at 754 (citing Cronic,
466 U.S. at 656).

 Generally, unless the record before us affirmatively satisfies both prongs of the Strickland
test, the appellant cannot prevail on a claim of ineffective assistance on direct appeal. Bessey v.
State, 199 S.W.3d 546, 555 (Tex. App.--Texarkana 2006, pet. granted) (citing Thompson v. State,
9 S.W.3d 808, 813 (Tex. Crim. App. 1999)). Certain appellate courts have, however, opined that
there are rare cases wherein prejudice may be presumed rather than merely proven. See, e.g., Javor
v. United States, 724 F.2d 831 (9th Cir. 1984). Those appellate decisions, as well as any
consequence such decisions may have in influencing our decision in this case, will be discussed in
greater detail below.

(2) The Record Does Not Establish Either Strickland Prong

 With respect to Strickland's first prong, Moore contends he received ineffective assistance
of counsel at trial because his trial counsel fell asleep during a portion of the State's cross-examination of Moore. Moore correctly notes that some courts have held that sleeping counsel is
tantamount to no counsel at all. See, e.g., Burdine v. Johnson, 262 F.3d 336, 349 (5th Cir. 2001)
(federal habeas corpus proceeding, after Texas courts declined to find ineffective assistance of
counsel; "repeated unconsciousness through not insubstantial portions of the critical guilt-innocence
phase" of trial; prejudice presumed); Tippins v. Walker, 77 F.3d 682 (2nd Cir. 1996) (counsel slept
through "substantial" part of trial; prejudice presumed); Javor, 724 F.2d at 833 (counsel asleep
during trial; prejudice presumed); cf. Siverson v. O'Leary, 764 F.2d 1208, 1216-17 (7th Cir. 1985)
(trial counsel's physical absence from courtroom while jury deliberated held to be structural denial
of counsel during critical stage of trial; no separate showing of prejudice was necessary); North
Dakota v. Keller, 57 N.D. 645, 223 N.W. 698 (1929) (attorney intoxicated to such extent that "he
did not know what was transpiring at all times"). In these rare cases, harm under Strickland's second
(prejudice) prong is presumed after it is first shown under Strickland's first (deficient performance)
prong that a substantial deprivation of counsel occurred. Burdine, 262 F.3d 336; Javor, 724 F.2d
831; Tippins, 77 F.3d 682; cf. Cronic, 466 U.S. 648. 

 In this case and at the conclusion of the State's cross-examination of Moore, the following
occurred:

[State]: I'll pass the witness, Your Honor.


THE COURT: Any re-direct?


(No response from defense counsel.)


THE COURT: Mr. Potter?


[State]: Charlie?


 RE-DIRECT EXAMINATION


Mr. Potter:


Q: Clyde, how long before that four days did . . . .


Moore's counsel questioned Moore on re-direct examination for two pages in the record before
passing the witness and resting his defense. Trial counsel's questions on re-direct concerned events
that occurred during the same time period as those events about which the State had asked during
the latter part of its cross-examination of Moore. 

 Shortly after the above events, the trial court excused the jury for a brief recess. During that
recess, the following exchange appears:

THE COURT: At the end of the State's examination, cross[-]examination of
the defendant in this case, the Court had to wake up defense counsel. And I want to
talk about this on the record for just a minute, because sitting here as the judge, I had
an opportunity to observe all of the participants in the case, including the attorneys,
and my observation of the defense attorney in this case was that I had noticed that he
had dozed off for a minute or less, shortly before the end of the State's cross[-]
examination of the defendant. I guess let me just ask the court officers who are here
-- Mr. Shepherd, did you make any observations in that regard?


[State]: Your Honor, what the State observed after completing my cross[-]
examination -- and I did inform the Court that the State would pass the witness. I did
come over to the State's table. I believe the Court addressed defense counsel,
inquiring as to whether there would be any further re-direct. The State did observe
that for a period of two to three seconds, defense counsel did not respond, but after
about three seconds, he did respond, responded to the Court. And defense counsel
did return to the podium to complete a re-direct examination of his client.


The State cannot say whether I personally observed defense counsel asleep
or not asleep. The State is not in the position to determine whether defense counsel
was, but I can place on the record that the defense counsel did return to the podium
on re-direct examination and completed it with questions which were applicable to
the facts in this case.


THE COURT: Let me ask, Mr. Feazell, the bailiff. Did you make any
observations of the defense counsel?


[Bailiff]:   Your   Honor,   all   I   noticed   is   --   I   was   partially   blocked. 
 Mr. Shepherd was standing partially between me and defense counsel, and I could
see defense counsel leaning over with his head in his hand. From my angle, I
couldn't tell if he was asleep or was just trying to think. However, the Court asked
him about three times to respond and he didn't until one of the court transportation
officers went over and either touched him or shook him or something. But I don't
know if he was asleep or just lost in thought.


THE COURT: Okay. Well, as I say, my position of being able to see
everything that was going on, it was very momentary, but during the vast majority of
the State's cross[-]examination of the defendant, counsel was awake, counsel was
taking notes, and it was only toward the very end that this occurred, so I don't see that
there's any particular issue that's been raised by this, but I wanted the record to be
clear on that.


Let me ask Mr. Potter, do you have anything that you would like to add in that
regard?


MR. POTTER: Your Honor, over the years, and I've been doing this almost
forty years, I've developed a habit of listening to testimony such as that with my eyes
closed. I heard every question, I heard every answer during Mr. Shepherd's cross[-]
examination.


I had formulated a couple of questions that I wanted to ask concerning the
place of residence of the child before this incident happened, as well as her recent
residence. Now, the question I was faced with at the end of this cross[-]examination
was whether to ask the questions and give Mike another shot at him, or whether or
not to ask any questions and get him off that stand.


Now, as you know, Mr. Moore disappeared from the courthouse quite some
time ago when this case was set for trial. He was out and on the run, so to speak, for
some period of time, and as recently, and I don't know exactly when, was arrested
and placed in jail. It was my understanding that there was a possibility that this
victim referred to as . . . moved back into the house with [the defendant and his
family] before he was arrested. And that's the problem I was facing. I didn't want to
walk through a door and get blasted.

But like I say, to my knowledge, I was not asleep. I was thinking about those
problems and trying to decide whether to ask him any more questions. I was not
asleep.


THE COURT: Alright, sir.


MR. POTTER: And I did decide to ask those questions, but then I decided
to shut up when I did because it could back fire on me.


As an attachment to his motion for new trial, Moore filed an affidavit from another attorney who was
present during Moore's trial. That affidavit reads:

1. My name is Edward Ray Keith, Jr. I am an attorney duly licensed to practice
law in the State of Texas. I was personally present during a portion of a criminal trial
in the 5th Judicial District Court of Bowie County, Texas, wherein Mr. Charles
Potter was acting as defense counsel and Mr. Mike Shepherd was acting as
prosecutor.


2. During a portion of that trial it appeared that Mr. Charles Potter, defense
counsel, was asleep. At one point during the trial, when called upon to question a
witness, Mr. Potter was unresponsive to the trial judge and failed to respond to
repeated requests. Mr. Potter finally responded when the prosecutor got up from his
desk, walked over and nudged Mr. Potter.


 Further affiant sayeth naught.

 On appeal, Moore characterizes the Keith affidavit as being one incident during trial at which
Moore's counsel slept. Moore then characterizes the jury recess colloquy (during which the trial
court talked with the prosecutor, defense counsel, and others about the court's perception that defense
counsel had been sleeping) as another, separate occurrence. The record before us, however, does not
suggest that the Keith affidavit and the reporter's record truly describe separate events. Instead, the
trial court's oral description and the description given in the Keith affidavit sound too similar to be
describing separate events. The only significant difference in the two accounts is who nudged
Moore's counsel; a difference which more likely indicates a difference in memory or a
misapprehension of the identity of the person who nudged counsel. Additionally, the Keith affidavit
lacks any description of what else had happened at that point in time, so as to demonstrate the point
during the trial at which that alleged sleeping incident occurred. Nor, as the State properly points
out in its appellate brief, does the affidavit even affirmatively state that the events being detailed
were directly related to Moore's case. Given the trial court's care at having a special colloquy about
the incident it detailed, it is unlikely that another, separate event could have occurred and escaped
the trial court's watchful eye, or that any other event was noticed but ignored by the trial court. We
conclude the two sources describe one event only. (1)

 The trial court concluded describing its perception of defense counsel's temporary lapse as
nothing that caused the court concern. In so doing, that court had the opportunity to consider the
State's assessment of the situation, the bailiff's espoused observations, and trial counsel's own
explanations of the event. The trial court also had the opportunity to make these assessments shortly
following the event in question. And, most importantly, the trial court was in the best position to
gauge the believability of all involved, especially the believability of Moore's trial counsel. 

 The record before us suggests the trial court ultimately decided either (1) that Moore's
counsel's "nap" was of such a temporary duration that it did not rise to the level of a "substantial"
absence from the proceedings or (2) that Moore's counsel was not really asleep at all but instead
merely deep in thought. The former assessment--that counsel's lapse amounted to no more than a
temporary absence--would be supported by the record in this case. The court first suggested that
counsel had been asleep for less than a minute or two. As such, we do not believe so brief a period
is long enough to require the automatic presumption of prejudice under Strickland's prong, vis-a-vis
Javor and Tippins. Cf. Bell v. Cone, 535 U.S. 685, 697-98 (2002) (declining to presume prejudice
in case where counsel was allegedly mentally ill because appellant had not brought forth
uncontradicted proof of evidence regarding counsel's mental health and where claimed professional
errors were of same type Court has typically held subject to Strickland's two-pronged approach);
McFarland, 163 S.W.3d at 753-54 (under circumstances, no prejudice presumed).

 Similarly, the trial court's latter potential assessment--that counsel was not asleep at all--is
equally supported by the record, especially given the bailiff's description of events and counsel's own
statement that he habitually places his head in his hands while thinking; that he did so in this case;
that, during the time when the trial court saw him with his hands in his head, counsel was
contemplating the various potential consequences of asking Moore additional questions following
the State's cross-examination; and that the questions of Moore on re-direct examination (which trial
counsel asked immediately after he was reportedly awakened) concerned the same time period and
events that were at issue during the State's questioning at the end of its cross-examination of Moore.
"Clyde, how long before that four days [when wife went to Little Rock] did [the victim] live with
ya'll? How long had she been there when your wife went to the hospital?"). And, as the record
supports the reasonable conclusion that Moore was not ever deprived of counsel because counsel was
never asleep, then Moore has failed to meet his burden of proof under Strickland's first prong.

 Moreover--given that the record does not support the presumption of prejudice under
Strickland's second prong vis-a-vis Javor and Tippins--even if Moore had met his appellate burden
to demonstrate a deprivation of counsel during part of the trial, Moore must demonstrate that
counsel's alleged ineffectiveness prejudiced the outcome of his case. Moore has not attempted to
make such a showing; instead, he has pinned his hopes on presumptive prejudice, which we have
already decided is not appropriate under the facts or law applicable in this case.

(3) Conclusion

 The record before us does not demonstrate that Moore's trial counsel slept through critical
or "substantial" portions of the trial. Instead, the appellate record lends itself to two, equally likely,
conclusions: trial counsel may have had a brief lack of consciousness--like a schoolboy lost in a
daydream--or a distracted focus on whether or to what degree counsel needed to conduct a re-direct
examination of Moore after the State completed its cross-examination. As such, we cannot say the 


record before us supports Moore's claim of ineffective assistance. We, therefore, overrule Moore's
sole point of error and affirm the trial court's judgment.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: May 16, 2007

Date Decided: June 27, 2007


Publish
1. If these were separate events (especially when, as is the case here, the record before us is not
at all clear that these incidents were distinct), then we believe habeas corpus would be a more
appropriate avenue for developing a record that more clearly reflects such a distinction. See, e.g.,
Goodspeed v. State, 187 S.W.3d 390, 394 (Tex. Crim. App. 2005) (Price, J., concurring) (when
record is inadequate to reflect factual basis for ineffective assistance claim, habeas corpus is a "more
appropriate avenue").