*Stegemann v. United States*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of November, two thousand twenty-two.

PRESENT:

> JOHN M. WALKER, JR.,
> RICHARD J. SULLIVAN,
>     *Circuit Judges*,
> MARY KAY VYSKOCIL,*
>     *District Judge.*

_____

JOSHUA G. STEGEMANN,

    *Petitioner-Appellant,*

    v.                                                                                           No. 20-3772

UNITED STATES OF AMERICA,

    *Respondent-Appellee.*

_____

_____

* Judge Mary Kay Vyskocil, of the United States District Court for the Southern District of New York, sitting by designation.

**FOR PETITIONER-APPELLANT:**         RICHARD W. LEVITT (Zachary Segal, *on the brief*), Levitt & Kaizer, New York, NY.

**FOR RESPONDENT-APPELLEE:**         RAJIT S. DOSANJH (Richard D. Belliss, *on the brief*), Assistant United States Attorneys, *for* Carla B. Freedman, United States Attorney for the Northern District of New York, Syracuse, NY.

Appeal from an order of the United States District Court for the Northern District of New York (Gary L. Sharpe, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court is **AFFIRMED.**

Joshua Stegemann appeals from the district court's order denying his motion to vacate his sentence under 28 U.S.C. § 2255. On appeal, Stegemann argues that he received ineffective assistance of counsel from his retained counsel, Elizabeth Quigley, who represented him for portions of the pre-trial proceedings and at trial, and from the Assistant Federal Defenders who represented him at the post-trial proceedings, at sentencing, and on direct appeal. As to Quigley, Stegemann argues that she erred by advising him to forgo a favorable plea deal

2

and by failing to move to suppress evidence seized from his residence pursuant to a search warrant on the grounds that the police unlawfully detonated a flash-bang device upon entering his home. As to the Assistant Federal Defenders, Stegemann argues that they erred post-verdict, by failing to seek the release of his funds that were seized as substitute property under 21 U.S.C. § 853(p), which allegedly prevented him from retaining the counsel of his choosing, and by declining to challenge the use of his prior Massachusetts drug conviction as a predicate for the career-offender enhancement under section 4B1.1 of the Sentencing Guidelines. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

On appeal from the denial of a section-2255 motion, we review the district court's "factual findings for clear error and questions of law de novo." *Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000) (internal quotation marks and emphasis omitted). The question of whether counsel provided ineffective assistance is a mixed question of law and fact, which we review de novo. *Id.*

To establish ineffective assistance of counsel, Stegemann must show that his attorneys' performance was both objectively unreasonable and prejudicial to his defense. *See Strickland v. Washington*, 466 U.S. 668, 687–88, 692 (1984).

3

Stegemann can satisfy the first prong by demonstrating that his attorneys' performance fell below an objective standard of reasonableness under "prevailing professional norms." *Id.* at 688. He can satisfy the second prong by demonstrating that there is a "reasonable probability" that, but for his attorneys' "unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. When determining whether counsel was ineffective, a court need not address both prongs if the defendant fails to make a showing on either one. *Id.* at 697.

First, Stegemann argues that Quigley's advice to reject the government's plea deal was deficient. To be sure, the decision of whether to plead guilty is often the "most important single decision in any criminal case." *Cardoza v. Rock*, 731 F.3d 169, 178 (2d Cir. 2013) (internal quotation marks omitted). In advising a client on this decision, defense counsel must "communicate to the defendant the terms of the plea offer[] and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000) (citation omitted). But the decision of whether to plead guilty ultimately belongs to the defendant, and the "lawyer must take care not to coerce

4

a client into either accepting or rejecting a plea offer." *Id.* Because defense counsel must balance, "on the one hand, failing to give advice and, on the other, coercing a plea," defense counsel's determination as to how best to advise a client "enjoys a wide range of reasonableness." *Id.*

Stegemann's argument fails because he cannot show that Quigley's advice was objectively unreasonable. Stegemann contends that Quigley provided ineffective assistance by advising him to reject the government's plea offer simply because it exceeded Stegemann's stated preference for a plea deal of no more than twelve-to-fourteen years' imprisonment – a cap that Stegemann now concedes was unrealistic. But the allegation that Quigley based her advice solely on Stegemann's unrealistic preference is contradicted by Quigley's affidavit, in which she averred that she and Stegemann fully discussed the terms of the deal, including the risks and benefits of accepting the offer as well as its mandatory minimum and maximum terms. In denying Stegemann's motion, the district court credited Quigley's version of events, rendering it reasonable for the district court to conclude that Quigley's performance did not fall below the objective standard of reasonableness under the first prong of the *Strickland* test.

5

Stegemann further argues that the district court erred by making its credibility determination without holding an evidentiary hearing. We disagree. A district court's decision to resolve a section-2255 motion without a hearing is reviewed for abuse of discretion. *See Chang v. United States*, 250 F.3d 79, 82 (2d Cir. 2001). Where, as here, the district court presided over the underlying proceedings, a "full-blown evidentiary hearing" is often unnecessary. *Raysor v. United States*, 647 F.3d 491, 494 (2d Cir. 2011). In light of the district court's familiarity with Stegemann and Quigley, gained over the course of trial and subsequent proceedings, including an evidentiary hearing at which Stegemann testified, we find that the district court's decision to resolve the motion on the basis of written submissions falls squarely within the zone of its discretion. *See Chang*, 250 F.3d at 86 (explaining that a district court's decision to not hold an evidentiary hearing avoids "the delay, the needless expenditure of judicial resources, the burden on trial counsel and the government, and perhaps the encouragement of other [litigants] to make similar baseless claims that would have resulted from a full testimonial hearing").

Stegemann next argues that Quigley provided ineffective assistance when she failed to move to suppress the evidence seized from Stegemann's home.

6

Under the Fourth Amendment, search warrants must "particularly describ[e] the place to be searched[] and the persons or things to be seized." U.S. Const. amend. IV. Nothing in the Fourth Amendment, however, requires warrants to describe "the precise manner in which they are to be executed." *Dalia v. United States*, 441 U.S. 238, 257 (1979); *see, e.g.*, *Richards v. Wisconsin*, 520 U.S. 385, 395–96 (1997) (upholding a no-knock search even without a no-knock warrant). Instead, "the manner in which a warrant is executed is subject to later judicial review as to its reasonableness." *Dalia*, 441 U.S. at 258.

Although Stegemann argues that Quigley should have challenged the search on the ground that the warrant did not authorize the use of a flash-bang device, the Fourth Amendment imposes no such requirement. *See id.* at 257 n.19 (noting that the Supreme Court has never held that the Constitution requires officers requesting a warrant to set forth the anticipated means for executing it). Indeed, courts have long recognized that flash-bang devices may be used without prior authorization where, as here, "it was reasonable for the officers to fear for their safety in conducting the search." *United States v. Boulanger*, 444 F.3d 76, 84–85 (1st Cir. 2006); *see also Terebesi v. Torreso*, 764 F.3d 217, 238 (2d Cir. 2014) (explaining that it "is more likely that using a stun grenade will be considered

7

reasonable if the subject of the search or arrest is known to pose a high risk of violent confrontation"). In this case, it was reasonable for law enforcement officers to fear for their safety because they had reason to believe that Stegemann possessed multiple firearms and knew that Stegemann had threatened to kill anyone who tried to enter his home. Since the officers' use of the flash-bang device was clearly reasonable under the circumstances, Quigley's strategic decision not to challenge the search on those grounds did not fall below "prevailing professional norms." *Strickland*, 466 U.S. at 688.

Stegemann next contends that his court-appointed counsel erred by failing, post-verdict, to seek the return of funds that had been seized, arguing for the first time in his section-2255 motion that he would have retained new counsel for sentencing were those funds made available to him. The Sixth Amendment allows "a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). The deprivation of the right to counsel of choice is a "structural error," for which a defendant need not demonstrate prejudice. *Id.* at 150 (internal quotation marks omitted). But even if it could be argued that Stegemann's counsel should have moved to release his funds – which the government now concedes were not

8

forfeitable as the proceeds of unlawful activity – Stegemann's claim nevertheless fails because he has not demonstrated that he was in fact deprived of the right to the attorney of his choosing. Stegemann offers no evidence to suggest that he would have procured retained counsel in the event that his funds had been returned. Indeed, although Stegemann asked the district court to "*appoint* [him] counsel" after Quigley filed her motion to withdraw, Gov't App'x at 642 (emphasis added), Stegemann never stated or implied that the seizure of his assets prevented him from retaining "his preferred representational choice," *Luis v. United States*, 578 U.S. 5, 12 (2016). And while Stegemann did advise the district court that he was "completely indigent," that comment was in response to the district court questioning why it should "not compel [Stegemann] to go out and hire another lawyer." Gov't App'x at 642–43. Stegemann certainly never said that he had contacted a lawyer – or even that he had one in mind – who, but for Stegemann's lack of ready funds, was prepared to take the case on short notice, post-verdict, to wrap up the sentencing. In short, Stegemann has not demonstrated any link between his counsel's asserted failure to move for the return of his funds and the denial of his right to choose who will represent him. Absent such a showing,

9

Stegemann is not entitled to a presumption of prejudice, and this claim of ineffective assistance fails.

Finally, Stegemann argues that his counsel, both at sentencing and on direct appeal, rendered ineffective assistance by failing to challenge the district court's consideration of his 1999 Massachusetts state-court conviction as a basis to adjudge him a career offender under section 4B1.1 of the Sentencing Guidelines. Under the Sentencing Guidelines, a defendant is subject to the career-offender enhancement when, among other things, he has "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). A court tasked with determining whether a particular conviction qualifies as a career-offender predicate must employ a "modified categorical approach," which generally considers the elements of the statute of conviction, rather than the facts underlying that offense. *United States v. Savage*, 542 F.3d 959, 964 (2d Cir. 2008).

Here, Stegemann's counsel did not err by declining to challenge the 1999 conviction as a predicate under the career offender enhancement. Stegemann cites to no authority to support his claim that, at the time of his sentencing, his 1999 conviction under Mass. Gen. Laws ch. 94C, § 32E(b) did not qualify as a

predicate under the career offender enhancement. To the contrary, while Stegemann's conviction was on direct appeal, the First Circuit expressly held that this statute was "unarguably a conviction for a controlled substance offense and, thus, a proper predicate offense under the career offender guideline." *United States v. Montoya*, 844 F.3d 63, 72 (1st Cir. 2016). On that basis alone, counsel's decision to forego such a legal argument cannot be said to fall below prevailing professional norms. *See United States v. Regalado*, 518 F.3d 143, 149–50 n.3 (2d Cir. 2008) (explaining that it is "beyond any doubt" that an attorney's "failure to make a meritless argument" cannot "amount to ineffective assistance" (internal quotation marks and alteration omitted)). Nor can it be argued that Stegemann was prejudiced by that decision, since it is not reasonably probable that the district court would have credited the argument and reached a conclusion at odds with the First Circuit's subsequent holding on the same issue. *See Strickland*, 466 U.S. at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."). Accordingly, we find that Stegemann has failed to show that he received ineffective assistance of counsel in connection with his sentencing.

We have considered Stegemann's remaining arguments and find them to be without merit.   Accordingly, we **AFFIRM** the order of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court