EDUARDO C. ROBRENO, District Judge
Joseph Massimino is a federal prisoner who, in 2013, was convicted of RICO conspiracy and sentenced to incarceration for 188 months. Massimino filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, claiming: 1) he received ineffective assistance of trial counsel; 2) his court-appointed conflicts counsel had a conflict of interest; and 3) cumulative error.
The Court finds that Massimino has not shown that his trial counsel was ineffective. Furthermore, Massimino has not shown that his conflicts counsel had a conflict. Finally, Massimino has not shown that cumulative errors denied him any Constitutional right. For the reasons set forth below, the § 2255 Motion will be denied, and a certificate of appealability will not be issued.
Table of Contents
I. BACKGROUND...362
A. Indictment, trial, conviction, and appeal...362
B. Procedural history of Massimino's § 2255 Motion...363
1. Grounds raised in the § 2255 Motion...363
2. Evidentiary hearing & rulings on discovery...364
a) Discovery of Santaguida's mental condition...364
b) Discovery of Santaguida's performance in another case...365 *362 c) Discovery concerning pole camera tapes ...365
II. CHALLENGES TO A FEDERAL SENTENCE...367
III. LEGAL TEST FOR INEFFECTIVE ASSISTANCE OF COUNSEL...367
A. Objectively reasonable representation...368
B. Prejudice to defense...368
C. Constructive denial of counsel...368
IV. GROUND ONE - INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL...369
A. Failure to investigate, call witnesses to testify, or prepare for trial...368
1. Troini...369
2. Iamurri...369
3. Ranieri...370
4. Huntzman...370
5. Tapes...370
6. Trial preparation...371
B. Independent judgment...371
C. Trial conduct...372
1. Sleep...372
2. Caprio...373
3. Procaccini...374
4. Closing argument...374
5. Work on other matters during trial...374
6. Other errors...375
D. Conclusion...375
V. GROUND TWO - INEFFECTIVE ASSISTANCE OF CONFLICTS COUNSEL...375
VI. GROUND THREE - CUMULATIVE ERROR...376
VII. CERTIFICATE OF APPEALABILITY...376
VIII. CONCLUSION...376
I. BACKGROUND
A. Indictment, trial, conviction, and appeal
Defendant Joseph Massimino was indicted on January 5, 2011, of one count of RICO conspiracy in violation of 18 U.S.C. § 1962(d) and three counts of conducting an illegal gambling business in violation of 18 U.S.C. § 1955. ECF No. 3. The charges arose from Massimino's involvement with a criminal enterprise known as the Philadelphia La Cosa Nostra Family ("the LCN Family") from 1999 through January 2011. The indictment charged thirteen members and associates of the LCN Family, including Massimino. Id. A third superseding indictment was unsealed on July 25, 2012, charging Massimino with the same violations. ECF No. 723. Massimino and six other defendants proceeded to trial in October 2012.
Joseph Santaguida, Esq. is a well-known Philadelphia criminal defense lawyer. Prior to the trial, Santaguida had represented Massimino in other criminal matters. At the time of the trial he was in his early-to-mid 70's. He is now retired. Santaguida represented Massimino in the trial over the third superseding indictment, and it is Santaguida's performance on behalf of Massimino that is at issue here.
Following a four-month trial during which Santaguida represented Massimino, a jury convicted Massimino of RICO conspiracy; the jury was unable to reach a unanimous verdict on the illegal gambling charges.[1]
*363 Massimino appealed his conviction and sentence, arguing seven grounds: 1) the evidence at trial was insufficient to convict him; 2) the Court abused its discretion by failing to excuse two jurors who had been exposed to extraneous information; 3) the Court wrongly admitted certain expert testimony of retired FBI Special Agent Joaquin Garcia; 4) the Court improperly precluded cross-examination of three FBI agents regarding disciplinary infractions in their personnel files related to cheating on an internal examination; 5) the Court abused its discretion in denying defense requests for the medical records of Michael Orlando, a Government witness whose trial testimony was interrupted by a hospital stay; 6) the Court incorrectly denied his motion to suppress evidence; and 7) the Court incorrectly sentenced him. See United States v. Massimino, 641 F. App'x 153, 160-69 (3d Cir. 2016). The Third Circuit denied Massimino's appeal on January 15, 2016. Id. at 155.
B. Procedural history of Massimino's § 2255 Motion
1. Grounds raised in the § 2255 Motion
Massimino's § 2255 Motion raises three grounds:
1) Joseph Santaguida, Esq., Massimino's trial counsel, was ineffective by: a) failing to investigate; b) failing to call witnesses; c) not focusing on Massimino's trial; d) not exercising independent judgment; and e) being compromised from the onset of cognitive impairment (ECF No. 1848 at 2-3);
2) Joseph Mancano, Esq., Massimino's court-appointed conflicts counsel, who was appointed because Santaguida had previously represented co-defendant Joseph Ligambi, had conflicts of interest arising from his: a) previous work as an Assistant United States Attorney in the same office as the prosecutors; b) simultaneous appointment as conflicts counsel for Ligambi; c) ineffective assistance by advising Massimino to waive conflicts (id. at 4, ECF No. 1848-1 at 22-24); and
3) The cumulative effect of the issues denied him 5th and 6th Amendment Rights (ECF No. 1848 at 4).
As to the ineffective assistance claim, Massimino first argues Santaguida failed to call the following witnesses at trial: i) Jerome Iamurri, a person who borrowed money from Massimino, and who would have testified that "at no time did he feel threatened" by a letter from Massimino telling him to repay the loan; ii) Stephen Troini, Massimino's friend who, in a phone call to Massimino, referred to him as the underboss; iii) James Ranieri, a friend of Government witness Jack Buscemi, and who would have testified at trial that Buscemi gave money to other people to make friends and also freely loaned money; and iv) Albert Huntzman, who would have testified that Government witness Michael Orlando was not extorted by Massimino. ECF Nos. 1848-1 at 16-17; 1848-2 (affidavits).
Second, Massimino argues that Santaguida failed to prepare and focus on Massimino's trial because Santaguida: i) worked on an unrelated murder trial during Massimino's trial; ii) did not review tape recordings made by the Government, and instead had his secretary, Victoria Clark, do the review; iii) did not purchase software to assist with the review; and iv) did not follow suggestions made by the counsel of Massimino's co-defendants. ECF No. 1848-1 at 18-19.
Third, Massimino argues that Santaguida did not exercise independent judgment because he relied on assistance from co-defendant *364 Joseph Ligambi's counsel, Edwin Jacobs, Esq. ECF No. 1848-1 at 19-21.
Finally, Massimino argues that Santaguida was cognitively impaired, as shown by his lack of strategy at trial, missteps during the trial, "bizarre closing argument," and sleeping through some of the trial. ECF No. 1848-1 at 21-22.
2. Evidentiary hearing & rulings on discovery
The Court held several days of hearings to develop the evidentiary record. ECF Nos. 1928, 1929, 1941, 1957, and 1970. The Court heard testimony from John Augustine (an FBI case agent who worked the racketeering investigation and was present at the trial); Steven Troini (Massimino's friend); Victoria Clark (Massimino's secretary); Larry O'Connor (an attorney familiar with Santaguida, and who represented a co-defendant at the trial); Massimino; Edwin Jacobs (an attorney familiar with Santaguida, and who represented the lead defendant); and Jerome Iamurri (a person who borrowed money from Massimino). See ECF Nos. 1928, 1929, and 1941.
In connection with the evidentiary hearing, Massimino sought discovery in three areas: a) Santaguida's mental condition at the time of trial; b) Santaguida's performance in another trial contemporaneous to this matter; and c) videotape recordings from a camera located on a pole ("pole camera") outside of the entrance to Lou's Crab Bar where Massimino was employed, with which the Government had recorded hundreds of hours of video.
a) Discovery of Santaguida's mental condition
Massimino sought to obtain discovery concerning Santaguida's mental health and condition at the time of the trial. Massimino's counsel explained that the evidence would tend to show that Santaguida was impaired during the preparation and trial of the case. In this context, Massimino sought the testimony from Santaguida's doctors, Dr. DePace and Dr. Sammartino, the doctors' medical records and notes from the treatment of Santaguida at the time of trial, opinions from third-party medical experts, and the testimony from Santaguida's staff and other witnesses who had observed Santaguida during the time he represented Massimino.
Massimino also subpoenaed Santaguida to testify at the evidentiary hearing. Santaguida's counsel filed a motion to quash the subpoena.
As a general matter, in order to establish an ineffective assistance of counsel claim under Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Massimino had to show that 1) his "counsel's representation fell below an objective standard of reasonableness," and 2) the deficient performance prejudiced his defense. See, e.g., ECF No. 1867 n.1. The issue under Strickland, therefore, was whether Santaguida's performance during his representation of Massimino was deficient, and not, as Massimino argued, that it was necessarily deficient because of Santaguida's mental condition. Therefore, the Court found that to a large extent, Massimino's discovery requests concerning Santaguida's mental capabilities at the time of trial were not relevant to the issue of whether, in fact, Santaguida's performance was deficient. See Dows v. Wood, 211 F.3d 480, 485-86 (9th Cir. 2000) ("[E]ven if [trial counsel] had been in the early stages of Alzheimer's at the time of [the defendant's] trial, this alone is not sufficient for a per se reversal of [the defendant's] conviction by a jury."); Smith v. Ylst, 826 F.2d 872, 875-76 (9th Cir. 1987) (The mental condition of counsel does not create prejudice "unless the condition manifests itself in courtroom behavior."); Buckelew v. United States, 575 F.2d 515, 520-21 (5th Cir. 1978) (denying ineffective *365 assistance of counsel claim where the defendants failed to make a specific allegation of prejudice resulting from counsel's supposed illness).
As to the specific request for medical records, the Court allowed Massimino to obtain such records but only for the purpose of determining whether Santaguida was competent to testify at the evidentiary hearing in light of the motion to quash. ECF No. 1928 at 31-32.
As to the motion to quash Santaguida's subpoena, the Court held an evidentiary hearing to consider lay and expert witness testimony, and the Court received expert reports, oral argument, and briefing. See ECF Nos. 1957 and 1967-70. The Court heard from two witnesses with personal knowledge of Santaguida's present-day capabilities, Santaguida's son, Rocco, and Santaguida's treating physician, Dr. Robert Sammartino. The Court also heard testimony from Massimino's retained expert, Dr. I. Howard Levin. The evidence showed that Santaguida is now suffering from Alzheimer's and dementia with significant vascular component that results in significant impairment of his cognitive functions. Santaguida's mental impairment is severe enough to render any current testimony unreliable. Ultimately, given the little probative value of Santaguida's testimony (because the threshold issue is whether his performance at trial was deficient and not whether any alleged deficiency was caused by his mental state) and the hardships that would be placed upon Santaguida by requiring to testify (because of his impaired condition), the Court found that Santaguida had met his burden to show why the subpoena should be quashed. ECF No. 1971.
b) Discovery of Santaguida's performance in another case
Massimino also sought to obtain discovery from Demetrius Cox, a Pennsylvania inmate who was represented by Santaguida in a homicide case which went to trial shortly before the close of Massimino's trial. ECF NO. 1910. Presumably, Cox could provide testimony as to Santaguida's performance during Cox's trial.
The Court denied Massimino's motion, explaining that the testimony as to how Santaguida performed in another case, whether good, bad, ugly, or just indifferent, was not relevant to the issue of whether Santaguida's performance was deficient in this case. ECF No. 1918 at 1 n.1.
c) Discovery concerning pole camera tapes
As part of the investigation into the racketeering conspiracy, the Government set up video and audio recording devices to record activity at Lou's Crab Bar in Philadelphia where Massimino was employed during the relevant time period. ECF No. 1928 at 37-38, 41-42. Massimino takes issue with Santaguida's performance in connection to two specific issues implicating certain video recordings.
First, the Government called bookmaker Jack Buscemi who testified that he went to Lou's Crab Bar in November and December of 2002 and 2003 to pay Massimino an annually-collected "street tax" i.e., an extortion payment.
Massimino sought discovery of the pole camera tapes purportedly showing the entrance to Lou's Crab Bar. ECF Nos. 1862 and 1898. According to Massimino, the tapes would show that Buscemi did not go to Lou's Crab Bar in November or December of 2002 or 2003 to pay the street tax. ECF No. 1848-1 at 13.
Given Massimino's proffer that the videotapes from the pole cameras would show that Buscemi had not visited Lou's at the times he claimed to have paid off Massimino, *366 the Court initially granted Massimino's request for the production of the videotapes. However, during the evidentiary hearing, it became apparent that the pole camera was sometimes inoperative, resulting in gaps in time, and that the pole camera did not show all of the access points to Lou's, resulting in gaps in space. As a result, the videotapes would not contradict or undermine Buscemi's testimony.[2] See ECF No. 1940 ¶ 3 & n.3. Under these circumstances, the Court vacated the production order, relieved the Government from having to produce the videotapes, and excluded the videotapes as evidence at the hearing.
Second, at trial, the Government played an audio recording of a telephone call from January 2004 in which Massimino used threatening words to extort the listener. Massimino also claims that the videotapes from either January 13 or 14, 2004[3] would show Massimino making this telephone call. Massimino claims that the videotape of this incident would have helped him prove that this conversation had nothing to do with the criminal enterprise. According to Massimino, Santaguida should have "gone to the FBI office, asked to see the January 13, 2004 pole camera tape, to determine to whom Massimino was speaking so he could prove that this conversation had nothing to do with an enterprise extortion or an extortion at all." ECF No. 1987 at 35.
Massimino's argument as to the value of the video footage of this call is speculative. If Massimino cannot remember who he was talking to, despite hearing the audio recordings, video of him talking on the telephone could not help him. There is no credible reason for Santaguida to have pursued any of the tapes from January 2004, and no reason for Massimino to review any of the tapes in connection with his § 2255 Motion.
Even if there was some merit to Massimino's arguments, he is procedurally barred from raising a claim on ineffectiveness based on the videotapes. As relevant here, a defendant must file a motion within one year from "the date on which the judgment of conviction becomes final," or "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(1), (4). Under Rule 2 of the Rules Governing § 2255 Proceedings, in the motion, the defendant must "(1) specify all the grounds for relief available to the moving party; [and] (2) state the facts supporting each ground."
A defendant will be permitted to make a post-limitation amendment to his § 2255 motion pursuant to Federal Rule of Civil Procedure 15(c) only if the amendment does not assert a new ground for relief supported by facts that are different in "both time and type" from those in the original motion. Mayle v. Felix, 545 U.S. 644, 656-64, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005) ; see also Hodge v. United States, 554 F.3d 372, 378 (3d Cir. 2009) (" Mayle forecloses the relation back of a new, untimely claim when it is 'supported by facts that differ in both time and type from those the original pleading set forth.' " (quoting Mayle, 545 U.S. at 650, 125 S.Ct. 2562 )).
Here, Massimino's § 2255 Motion alleged an ineffective assistance of counsel claim premised on a failure to investigate. ECF No. 1848-1 at 16-18, 30-35. When stating the facts in support of this claim, *367 Massimino referenced audio recordings only; he made no mention of any video recordings despite being long-aware of the video recordings from before the trial, and he made no mention of the January 2004 telephone call or how video footage of the call would have aided his defense. Id.
The Motion's deficiencies are confirmed by Massimino's other filings. First, contemporaneous with the § 2255 Motion, Massimino sought the production of medical records. ECF No. 1810. Notably absent is a request for video or even audio recordings. Following the Government's Response, Massimino filed a Reply in which he stated that he had "evidence to offer at an evidentiary hearing as to all of the following," but only referenced "listen[ing] to tapes." ECF No. 1849 at 2-3. There is no reference to viewing videotapes.
The first time that Massimino indicated that he intended to argue that the pole camera videotapes would provide factual support for his ineffectiveness claim was in a production request submitted on December 5, 2017. ECF No. 1862. However, Massimino failed to adequately explain why information about the video footage could not have been discovered through the exercise of due diligence.
Thus, to the extent Massimino has attempted to bring an ineffective assistance of counsel claim premised on the specific facts concerning video footage, Massimino failed to make a timely claim before the statute of limitations had run, and he cannot amend the motion to include such a claim now.
II. CHALLENGES TO A FEDERAL SENTENCE
A federal prisoner may bring a motion to vacate, set aside, or correct his sentence on the basis that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).
In general, claims not raised on direct appeal may not be raised on collateral review unless the prisoner demonstrates cause and prejudice. See Massaro v. United States, 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003). However, an ineffective assistance of counsel claim, in particular, may be raised in a motion under § 2255 regardless of whether the prisoner first raised the claim on direct appeal. See id.
III. LEGAL TEST FOR INEFFECTIVE ASSISTANCE OF COUNSEL
To obtain reversal of a conviction on the basis of ineffective assistance of counsel in violation of the Sixth Amendment, a prisoner must establish: 1) his "counsel's representation fell below an objective standard of reasonableness," and 2) the deficient performance prejudiced his defense. Strickland, 466 U.S. at 687-88, 104 S.Ct. 2052 ; Holland v. Horn, 519 F.3d 107, 120 (3d Cir. 2008). If a prisoner fails to satisfy either prong of the Strickland standard, his claim will fail. Strickland, 466 U.S. at 697, 104 S.Ct. 2052.
Counsel's strategic choices have a strong presumption of correctness. Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996). Counsel cannot be ineffective for failing to raise meritless claims. Lafler v. Cooper, 566 U.S. 156, 167, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012) ("Because the objection upon which [the petitioner's] ineffective-assistance-of-counsel claim was premised was meritless, [the petitioner] could not demonstrate an error entitling him to relief.").
*368 A. Objectively reasonable representation
A court will consider the reasonableness of counsel's performance under all of the circumstances, and the court's "scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689, 104 S.Ct. 2052. The court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id.
" Strickland does not guarantee perfect representation, only a 'reasonably competent attorney.' " Harrington v. Richter, 562 U.S. 86, 110, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011) (quoting Strickland, 466 U.S. at 687, 104 S.Ct. 2052 ). Counsel need not advance every single possible argument, or even the best argument. See Marshall v. Hendricks, 307 F.3d 36, 91 (3d Cir. 2002) (rejecting defendant's claim that his counsel could have taken "better" approaches to aspects of the defense).
To satisfy the first prong of Strickland, the prisoner must: 1) identify acts or omissions that do not result from "reasonable professional judgment," and 2) establish that the identified acts and omissions fall outside of the "wide range of professionally competent assistance." Strickland, 466 U.S. at 690, 104 S.Ct. 2052.
B. Prejudice to defense
To prove prejudice, a prisoner must affirmatively show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. 2052. "A reasonable probability is probability sufficient to undermine confidence in the outcome." Id.
C. Constructive denial of counsel
Most ineffective assistance of counsel claims are analyzed under Strickland, but under some limited circumstances, prejudice may be presumed because the defendant was subjected to a constructive denial of counsel. See United States v. Cronic, 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) ; Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001) ("The claim of ineffective assistance of counsel must be evaluated from a federal constitutional basis under the standards set forth in [ Strickland ]. The constructive denial of counsel analysis, on the other hand, stems from the Supreme Court's decision in [ Cronic ].").
A constructive denial of counsel occurs "when counsel entirely fails to subject the prosecution's case to [meaningful adversarial] testing." Appel, 250 F.3d at 212.
IV. GROUND ONE - INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL
Massimino's arguments in support of Ground One can be grouped as follows: first, Santaguida failed to investigate, call witnesses, or prepare for trial; second, Santaguida failed to exercise independent judgment; and third, Santaguid's trial performance was deficient. The Court examines each group in turn.
A. Failure to investigate, call witnesses to testify, or prepare for trial
Massimino argued that Santaguida failed to investigate numerous aspects of *369 the case and failed to call certain witnesses to testify. The Court will consider each of the witnesses and their proffered testimony in turn.
1. Troini
Troini has known and been a friend of Massimino for over 40 years. At the trial, the Government played a tape recording of a telephone conversation in which an unidentified man said to Massimino, "Uh, my grandson is with me ... He wanted to meet the underboss real fast. I was wondering if you can ...." In response, Massimino said, "Yeah."
At the evidentiary hearing, Troini testified that he was the person who made the call and that he had jokingly referred to Massimino as "the underboss." Troini testified that he used the term because he had seen a news report which called Massimino an underboss. He testified that he did not know what the term meant at the time but he found it "funny," and that he was joking when he used it.
According to Massimino, Santaguida was ineffective for failing to talk to Troini and for failing to call him to testify.
Santaguida was not ineffective because whatever Troini's reasons were for calling Massimino the "underboss," Massimino's response was an admission. Calling Troini to testify about what he meant or why he thought the term "underboss" was "funny" would not have undercut the strength of Massimino's admission. Under these circumstances, Troini's testimony as a defense witness would not have helped Massimino's defense and would not have made a substantial difference to the outcome of the trial.
2. Iamurri
Iamurri was a person who borrowed money from Massimino. At the trial, the Government produced a letter sent by Massimino to a friend, in which Massimino asked the friend to relay a message to Iamurri saying that:
[H]e better get my fuckin money. I don't care who the fuck he owes he better get mine. This mother fucker owes me [$]35,000. I don't care if he has to rob a bank. He fuckin better get my money. He would [have] never did what he did if Crutch was around. He waited for him to die. That bald headed mother fucker. I'm tired of the stories and bullshit. He won't be able to hide anywhere in the U.S. Tell him to get on this for me.
At the evidentiary hearing, Iamurri testified that he had been convicted once for bank fraud and once for theft. He testified that he borrowed $30,000 from Massimino, but that there was no written agreement or terms to the loan, and there was no interest on it. He further testified that when he received the letter, he was worried and sufficiently concerned about the language used by Massimino in the letter that he went to talk to Joseph Ligambi, a person he knew as the boss of the LCN Family and an associate of Massimino. He testified that when he met with Ligambi to discuss the letter, Anthony Staino (another co-defendant from the trial) was present. Ligambi and Staino told Iamurri not to worry about the letter.
According to Massimino, Santaguida was ineffective for failing to call Iamurri to testify.
Santaguida was not ineffective because Iamurri's testimony would not have clarified in favor of Massimino the content of the letter. In fact, the testimony would have confirmed that Iamurri felt threatened by the language used by Massimino in the letter. Moreover, Iamurri's testimony concerning his meeting with Ligambi and co-defendant Staino would have underscored Massimino's ties to the LCN Family. Massimino fails to show that Iamurri's *370 testimony would have made a substantial difference to the outcome of the trial.
3. Ranieri
Ranieri was a friend of Buscemi in the 1990's. Massimino only presented an affidavit from Ranieri in support of his § 2255 Motion; Ranieri did not testify at the evidentiary hearing. In the affidavit, Ranieri stated that he would have testified at trial that Buscemi gave money to other people to make friends and also freely loaned money. Ranieri claims that Santaguida is also friendly with Buscemi. Massimino did not include any briefing on Ranieri in his proposed Findings of Fact and Conclusions of Law. Accordingly, it appears that Massimino has abandoned his ineffective claim premised on Ranieri's putative testimony.
To the extent Massimino has not abandoned this argument, Ranieri's proposed testimony would have had no bearing on whether Buscemi made extortion payments to Massimino. Massimino has failed to show that Ranieri's testimony would have made a substantial difference to the outcome of the trial, and Santaguida cannot be found to have been ineffective on this issue.
4. Huntzman
Huntzman is the nephew of the former owner of a bar called Sam's Saloon in Glenolden, Pennsylvania.
Massimino only presented an affidavit from Huntzman in support of his § 2255 Motion; Huntzman did not testify at the evidentiary hearing. Massimino did not include any briefing on Huntzman in his proposed Findings of Fact and Conclusions of Law. Accordingly, it appears that Massimino has abandoned his ineffective claim premised on Huntzman's putative testimony.
To the extent Massimino has not abandoned this argument, Huntzman's proposed substantive testimony about the Orlando incident[4] would not have been admitted because it consisted of multiple levels of hearsay. Moreover, Santaguida effectively cross-examined Orlando and adduced testimony that Massimino had not tried to extort Orlando. Massimino has failed to show that Huntzman's testimony would have made a substantial difference to the outcome of the trial, and Santaguida cannot be found to have been ineffective on this issue.
5. Tapes
At the evidentiary hearing, Victoria Clark, Santaguida's secretary, testified about her role in assisting Santaguida with trial preparation. Clark testified that she was directed to print hardcopies from the discs and hard-drives containing the discovery. Clark testified that Santaguida had used the paper discovery provided by the Government as a guide for what tapes had to be listened to. Clark also testified that Santaguida did not purchase software that would have aided with indexing the tapes.
Clark explained that there were hundreds of hours of tape-recorded conversations and that she listened to the tapes as directed by Santaguida. She further testified that she was asked by Santaguida to bring to his attention those recordings where people were asking Massimino about "the lines," a gambling term which would mean Massimino was acting as a *371 bookmaker. She testified that she brought relevant conversations to Santaguida's attention and he listened to them. Clark testified that neither she nor Santaguida listened to all of the tapes.
According to Massimino, Santaguida was ineffective because: i) he failed to purchase the software to assist with the review of the tapes, thereby increasing the workload on his secretary; ii) he delegated the review to Clark instead of doing it all himself; and iii) not all of the tapes were listened to.
Santaguida was not ineffective. As an initial matter, Massimino did not cite any authority from the Third Circuit or elsewhere, which holds that counsel is per se ineffective by delegating investigative or review work, especially where counsel then reviews the relevant material found by the delegee. Compare Rhode v. Hall, 582 F.3d 1273, 1283 (11th Cir. 2009) ("Since [defendant]'s counsel hired investigators who interviewed potential witnesses and shared all of their information with counsel, we cannot say that counsel performed deficiently by delegating the mitigation investigation to them.") and Bunker v. Sauser, 996 F.2d 1223 (9th Cir. 1993) ("[P]etitioner has not provided any explanation or authority for the proposition that delegating investigative work amounts to ineffective assistance of counsel.") with Foust v. Houk, 655 F.3d 524, 537 (6th Cir. 2011) (ineffectiveness shown where counsel abrogated to non-attorney the decision-making responsibility about how to present death penalty mitigation defense).
Massimino claims that purchasing certain software would have assisted Santaguida in the review of the tapes. But even if it would have helped, it was not required in order to review the tapes because the Government provided several indices of the tapes through which all of the tapes could be identified. Here, relying on the Government indices, the propriety of which Massimino has not challenged, Santaguida directed Clark to the materials he wanted her to review.
Crucially, Massimino has failed to identify any specific tape that Santaguida should have but did not review because the contents could have been used in some way to effect a different outcome at trial. Under Strickland, Santaguida cannot be found to be ineffective because there was no prejudice to Massimino at trial.
6. Trial preparation
Massimino relies on Jacobs's testimony at the evidentiary hearing to argue that Santaguida had not prepared for trial. But Clark, who interacted with Santaguida on a daily basis, testified that she saw Santaguida preparing for trial. Moreover, O'Connor testified that he discussed the case with Santaguida several times, found his advice to be excellent, and that he had no doubt that Santaguida was prepared for trial. The Court finds that the testimony by Jacobs to the contrary to be of limited value in that Jacobs failed to identify a specific instance where Santaguida did or did not do something based on a lack of preparation that prejudiced Massimino.
Massimino's claim that Santaguida was ineffective for failing to prepare for trial fails.
B. Independent judgment
Massimino argues that Santaguida failed to exercise independent judgment because Jacobs was the "boss" of the lawyers, deferred to Jacobs's judgment, believed Jacobs would "carry the load," and left it to Jacobs to "clean up issues left uncontested." ECF No. 1848-1 at 7, 20; ECF No. 1987 at 19 ¶ 9. Massimino also argues that Jacobs "did not know about, nor was he the proper lawyer to call, the many witnesses Massimino asked Santaguida *372 to call [on his behalf]." ECF No. 1987 at 19 ¶ 9.
Massimino's claim lacks evidentiary support. The testimony from Jacobs and O'Connor at the evidentiary hearing showed that Santaguida attended numerous strategy meetings with other counsel where they divided and shared responsibility for various tasks. To the extent Massimino argues that Santaguida himself should have called various witnesses who instead were called as a witness by Jacobs, and that Jacobs was the wrong lawyer to call them, Massimino has failed to identify any such witnesses or to specify how he was prejudiced by Jacobs's role in calling the witnesses.
Massimino fails to cite record evidence showing that Santaguida deferred to Jacobs, or that Jacobs was the boss of the lawyers, cleaned up after Santaguida, or carried the load for Santaguida.[5]
C. Trial conduct
1. Sleep
Massimino argues that Santaguida was ineffective because he slept at various times during trial. At the evidentiary hearing, Massimino testified that Santaguida "slept every day" during trial, and that either Massimino or co-defendant George Borgesi would kick Santaguida's chair to wake him. Jacobs testified that Santaguida fell asleep on numerous occasions, perhaps once or more every week, for up to 15 seconds at a time, and that Jacobs would wake Santaguida by touching him. Jacobs testified that he never noticed Massimino wake up Santaguida during the trial. Jacobs also testified that he never communicated his observations to the Court or the prosecution, and that he couldn't recall informing the other defendants' lawyers about Santaguida falling asleep at trial.
O'Connor testified that he was not in the best position to observe Santaguida (because he was seated in front of Santaguida during trial), but nevertheless, he never saw Santaguida sleeping during the trial, never heard him snoring, and that no-one reported any such incidents to him.
Augustine testified that he was present for all but one or possibly two days of the trial. Augustine observed what was happening at the defense table, and that only once during the trial did he see Santaguida with his eyes closed, appearing to have "nodded off."
The Court finds that Massimino has failed to adduce sufficient evidence to show that Santaguida fell asleep during the trial, either for a substantial portion of the trial or at a critical point in the trial. Augustine saw Santaguida with his eyes closed only once, despite observing the defense table during the trial. O'Connor never saw or heard Santaguida sleeping. Massimino's and Jacobs's testimonies do not accord because Jacobs never noticed Massimino wake Santaguida. Importantly, Jacobs never reported to the Court, to other counsel, or to any professional board his concerns about Santaguida sleeping, although he would have had a duty to do so. See Pa. R. Prof'l Conduct 8.3(a) ("A lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, shall inform the appropriate professional authority."); Local R. Civ. P. 83.6, Rule IV (adopting Pennsylvania Rules of Professional Conduct); Local R. Crim. P.
*373 1.2 (adopting the Local Civil Rules on attorney conduct).
The Third Circuit has not yet considered whether Cronic applies and prejudice must be presumed when defense counsel sleeps during trial. However, the Third Circuit acknowledged that at least the Second Circuit has "presum[ed] prejudice when defense counsel slept through a substantial portion of trial, thereby suspending the adversarial nature of the process." Appel, 250 F.3d at 215 (citing Tippins v. Walker, 77 F.3d 682, 687 (2d Cir. 1996) ).
Several circuits that have considered this issue have rejected a per se approach, instead requiring for ineffectiveness to be shown that defense counsel was asleep at a critical time or pervasively through trial. See United States v. Ragin, 820 F.3d 609, 619 & n.3 (4th Cir. 2016) (holding that "a defendant's Sixth Amendment right to counsel is violated when that defendant's counsel is asleep during a substantial portion of the defendant's trial," and not precluding a claim if the evidence showed that defense counsel was asleep "during a critical portion of the defendant's trial.") (collecting cases); Muniz v. Smith, 647 F.3d 619, 625-26 (6th Cir. 2011) ; Burdine v. Johnson, 262 F.3d 336, 341 (5th Cir. 2001) ; Tippins, 77 F.3d at 687 ; Javor v. United States, 724 F.2d 831, 834 (9th Cir. 1984).
District courts within the Third Circuit have followed the approach taken by these other circuits. See, e.g., United States v. Buckman, No. CR 14-540, 2017 WL 3337154, at *5 (E.D. Pa. Aug. 4, 2017) ("There is no evidence in this record to support a finding that Buckman's trial counsel was asleep during a substantial portion of trial, let alone during any portion of trial. Closing one's eyes at times during a trial does not constitute sleeping.").[6]
Following the approach taken by other circuits and district courts within the Third Circuit, the Court finds that prejudice cannot be presumed because Massimino has failed to show that Santaguida slept at a critical time or during a substantial portion of the trial such that Massimino was effectively denied representation. Furthermore, in the absence of presumed prejudice under Cronic, Massimino's claim of ineffectiveness under Strickland fail because he has failed to show specifically how he was prejudiced by any inattentiveness by Santaguida such that there is a substantial likelihood that the outcome of the trial would have been different.
2. Caprio
Massimino argues that Santaguida was ineffective because he made obvious mistakes in courtroom decorum, in particular by insulting Government witness Peter Caprio during trial. Caprio was a cooperating witness with whom Santaguida was acquainted as a result of Santaguida's prior legal representation on behalf of certain LCN Family members. When Caprio appeared to testify as a Government witness, Santaguida exclaimed "Wow, he got old!"[7] Having been alerted to Santaguida's conduct, *374 the Court admonished him to refrain from directing comments to a witness while on the stand.
To the extent Santaguida improperly commented out loud on Caprio's appearance, he did so outside the presence of the jury and there is no evidence that Caprio's testimony was affected by Santaguida's comment. Massimino's claim for ineffectiveness fails because he has not shown prejudice to his case.
3. Procaccini
Massimino argues that Santaguida was ineffective in his cross-examination of Government witness Joseph Procaccini, who was an employee of and testified about M & P Vending's video poker gambling business and how M & P was extorted.
As discussed above, counsel for the defendants met, discussed strategy, and shared tasks and responsibilities. At the evidentiary hearing, Jacobs testified that he did "all the heavy lifting" and "all the important stuff" with regard to the video poker gambling business witnesses. Massimino does not argue that Jacobs's cross-examination of Procaccini was deficient. As to Santaguida's own cross-examination of Procaccini, Massimino has failed to show how it was deficient and if so, how he was prejudiced by it. Therefore, Massimino's claim for ineffectiveness fails.
4. Closing argument
Massimino argues that Santaguida was ineffective because he "offered a bizarre closing argument." The record shows that during closing argument, Santaguida attacked the Government's case arguing that it had not carried its burden of proof as to the racketeering enterprise, Massimino's role in it, and specific conduct charged against Massimino. See ECF No. 1274 at 99-121. Santaguida challenged the evidence in many ways, including by questioning the credibility and character of various witnesses, the relevancy of testimony, highlighting favorable testimony from Government witnesses, and arguing that the Government had failed to bring witnesses to testify on specific aspects of the prosecution's case.
Massimino's claim for ineffectiveness fails because he has not shown that Santaguida's closing argument was outside the range of reasonable professional assistance. Furthermore, Massimino has not shown that his case was prejudiced by Santaguida's closing.
5. Work on other matters during trial
Massimino argues that Santaguida was ineffective because Santaguida was absent during portions of the trial to work on other cases, including a murder trial, while representing Massimino.
The record shows that Santaguida was present throughout the entire four months of the trial and was absent only during a portion of the jury charge and deliberations as a result of a scheduling conflict. Even in that instance, Santaguida informed the Court of the issue and the Court conducted a colloquy on the record with Massimino, Santaguida, and Brendan McQuiggan, Esq., the attorney who joined Santaguida's representation of Massimino during the jury charge and jury deliberations. Massimino agreed on the record to allow Santaguida to be absent temporarily and that McQuiggan would act as his attorney as needed.
Massimino has failed to show that Santaguida's representation was outside the wide range of reasonable professional assistance, and he has failed to identify any prejudice to his case in regard to this issue. His claim for ineffectiveness fails here.
*375 6. Other errors
Along with specific allegations, Massimino also argues more generally that Santaguida was ineffective because he did not follow the advice of counsel for the other defendants during the pre-trial and trial phases, and had no defense strategy.
The trial record shows that Santaguida was a vigorous advocate on Massimino's behalf, and was prepared to and did tackle the Government's case. Santaguida's strategy was not unreasonable. He challenged the existence of the racketeering enterprise, Massimino's involvement, and the credibility of the Government's witnesses. Strickland requires Massimino to identify specific acts or omissions by Santaguida that fall below the reasonable representation standard, and to identify the ensuing prejudice. But Massimino has failed to identify specific acts or omissions, or ensuing prejudice, and so his ineffectiveness claim fails.
D. Conclusion
Massimino has failed to show that Santaguida's representation fell below the standard required by the Constitution or that if it did, Massimino suffered any prejudice as a result of Santaguida's conduct either in preparation for or at trial. Ground One lacks merit, and the § 2255 Motion is denied as to this ground.
V. GROUND TWO - INEFFECTIVE ASSISTANCE OF CONFLICTS COUNSEL
Massimino presented no evidence in support of his claim of ineffective assistance of counsel arising from conflicts counsel's conflict of interest. Furthermore, Massimino did not include any briefing on this claim in his proposed Findings of Fact and Conclusions of Law. Accordingly, it appears that Massimino has abandoned this claim.
To the extent Massimino has not abandoned the conflict claim, it is nevertheless without merit. Massimino argues the Court appointed Mancano "to advise Massimino concerning [the] potential conflict [Santaguida] might have, since [Santaguida] had before represented both lead defendant Joseph Ligambi and Massimino at various times." ECF No. 1848-1 at 23. Massimino further argues that Mancano was also appointed to represent Ligambi, "since he also had been prior represented by Santaguida," and that Mancano "was required to consult independent counsel to determine whether to waive the conflict of interest" presented by Santaguida's representation of Massimino. Id. Massimino argues that Mancano had a conflict of interest arising from his work as an assistant United States attorney many years ago.
"To prove a conflict of interest violative of the sixth amendment, a claimant must prove (1) multiple representation that (2) created an actual conflict of interest that (3) adversely affected the lawyer's performance." Sullivan v. Cuyler, 723 F.2d 1077, 1084 (3d Cir. 1983).
The Court finds Massimino's assertions are baseless. First, as the record shows, Mancano did not do double-duty by acting as conflicts counsel to both Ligambi and Massimino. The Court held hearings with Massimino and Ligambi to resolve the conflict issues arising from Santaguida's representation: Mancano only represented Massimino, ECF No. 1257; Ligambi was represented by his trial counsel, Jacobs, ECF No. 1256. At the hearing, Massimino knowingly and voluntarily waived Santaguida's actual and potential conflicts.
Second, Massimino has not shown that Mancano had an actual conflict of interest arising from his previous work many years ago as an assistant United States attorney. An actual conflict does not arise merely *376 because Mancano worked in the same office as and knew the prosecutors in Massimino's case, or because Mancano worked in the organized crime squad in the same office. See Mickens v. Taylor, 535 U.S. 162, 171, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002) (" '[A]n actual conflict of interest' meant precisely a conflict that affected counsel's performance-as opposed to a mere theoretical division of loyalties."). Massimino failed to show that Mancano was even employed in the office of the U.S. Attorney for the Eastern District of Pennsylvania at any time during the investigation or prosecution of his case.
Third, Massimino has failed to identify any aspect of Mancano's performance that was adversely affected by the conflict. Massimino alleges that Mancano met with Massimino and Ligambi together because Massimino refused to meet Mancano without Ligambi being present. But Massimino failed to adduce any evidence in connection with this allegation. Moreover, Massimino fails to explain how Mancano's performance was adversely affected by the alleged actual conflict of interest.
Massimino's claim for ineffective assistance of conflicts counsel fails in all aspects. Ground Two is therefore without merit, and the § 2255 Motion is denied as to this ground.
VI. GROUND THREE - CUMULATIVE ERROR
Massimino has failed to establish any ineffective assistance of counsel claims. Even bringing all of his ineffectiveness claims together does not make them amount to prejudicial error. The Court finds Massimino's assertions of cumulative error are without merit, and the § 2255 Motion is denied as to this ground.
VII. CERTIFICATE OF APPEALABILITY
When a court issues a final order denying a § 2255 motion, it must also decide whether to issue a certificate of appealability. Such a certificate "may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Pabon v. Mahanoy, 654 F.3d 385, 393 (3d Cir. 2011) (quoting Miller-El v. Cockrell, 537 U.S. 322, 327, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) ).
Here, Massimino has not made a sufficient showing that reasonable jurists could disagree or that the issues should be pursued further, so the Court will not issue a certificate of appealability.
VIII. CONCLUSION
For the foregoing reasons, the Court finds that Massimino's arguments are without merit. As to Ground One, Massimino's trial counsel's performance did not fall below the requirements imposed by the Constitution. As to Ground Two, Massimino has not shown that his conflicts counsel himself had a conflict of interest or that conflicts counsel rendered ineffective assistance. As to Ground Three, Massimino has not shown any cumulative error that resulted in the denial of his Constitutional rights.
The Court denies the § 2255 Motion on all grounds and does not issue a certificate of appealability.
ORDER
AND NOW , this 29th day of July, 2019, for the reasons set forth in the accompanying *377 memorandum, it is hereby ORDERED as follows:
1. Defendant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (ECF Nos. 1809 & 1848) is DENIED .
2. A certificate of appealability SHALL NOT ISSUE .
3. The Clerk of Court shall mark this case CLOSED .
AND IT IS SO ORDERED.

Massimino was tried with six other defendants. As to the conspiracy count, the jury found Massimino and two other defendants guilty, one defendant not guilty, and could not reach a verdict for the remaining three defendants.

Moreover, by Massimino's own admission, he reviewed all of tapes but appears not to have identified anything of use to him.

Massimino has identified the date variously as January 13 or January 14.

The Government introduced testimony that Orlando took out a $5,000 street loan from Massimino's co-defendant and fellow LCN Family member Damion Canalichio. See Massimino, 641 F. App'x at 158. Orlando stopped making payments when Canalichio was incarcerated. Id. Orlando testified that "he was summoned to see Massimino in connection with an unpaid LCN debt to Canalichio, and that he was fearful of LCN retribution if he were to leave the debt unsatisfied." Id. at 161.

Massimino's argument contradicts his contention that Santaguida exercised too much independent judgment by ignoring the opinions and advice from the other defense lawyers. See ECF No. 1987 at 19 ¶ 8.

See also United States v. Donahue, No. 3:11-CR-33, 2018 WL 1410772, at *5 & n.6 (M.D. Pa. Mar. 21, 2018) ; United States v. Best, No. CR 13-0195, 2018 WL 3707426, at *12 (W.D. Pa. Aug. 3, 2018) ; United States v. Nassida, No. 2:14-CR-00241(2)-DWA, 2017 WL 1684299, at *4 (W.D. Pa. May 1, 2017) (concluding that the Third Circuit "would hold, consistent with its sister circuits, that a presumption of prejudice is warranted, and the defendant's Sixth Amendment right to counsel is violated, when the defendant's counsel is sleeping during a substantial portion of the trial.").

This exclamation does not appear in the trial transcript. Government counsel who participated in the trial stated that his recollection was that Santaguida used these words. See ECF No. 1991 at 35 n.4.